UNITED STATES of America,
Plaintiff–Appellee,

v.

James Edwards ADAMS,
Defendant–Appellant.

No. 80–1140
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Jan. 19, 1981.

Myron H. Garner, Dallas, Tex., (Court–appointed), for defendant–appellant.

Shirley Baccus–Lobel, Paul E. Coggins, Asst. U. S. Attys., Dallas, Tex., for plaintiff–appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

James Edward Adams was convicted after a jury trial in the District Court for the Northern District of Texas of three counts of using a telephone in the furtherance of a conspiracy to distribute heroin and was sentenced by the trial judge to three consecutive four year prison terms. Adams does not challenge the fairness of his trial or of his sentencing; instead, he seeks to enforce a purported plea bargain pursuant to which he was to plead guilty to two of the counts in exchange for a probated sentence. We do not believe that Adams is entitled to specifically enforce the terms of this agreement; although a bargain may have been made between Adams and the prosecutor, the record demonstrates that the judge rejected the agreement within the sound exercise of her discretion. The record also indicates, however, that the trial judge actively participated in plea discussions prior to Adams' plea of not guilty. Although Adams does not challenge the judge's actions, her participation in plea discussions is a serious violation of Rule 11(e)(1) of the Federal Rules of Criminal Procedure. In order to enforce that Rule and protect defendants against the dangers implicit in judicial participation in plea discussions, we raise the issue *sua sponte* and, pursuant to our supervisory power over the district courts, determine the appropriate remedy to violations of Rule 11(e)(1) in cases where, as here, the defendant pleads not guilty and demonstrates no actual prejudice in his trial or sentencing. We conclude below, on the basis of the fundamental rationales underlying strict enforcement of Fed.R.Crim.P. 11 insofar as its core concerns are implicated, that such a defendant should not receive

a new trial but should be resentenced before a judge other that the one who participated in the unsuccessful plea discussions which preceded his trial.

## I. THE FACTS

On May 30, 1979, a grand jury in the Northern District of Texas handed down a thirty–five count indictment naming a total of twenty–one defendants in connection with an alleged conspiracy to distribute heroin in the Dallas, Texas area. The appellant herein, James Edward Adams, was indicted therein for one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 841(a)(1), and for three counts of using a telephone in the furtherance of a conspiracy to distribute heroin in violation of 21 U.S.C. § 843(b).

Adams was arrested on August 20, 1979, and on that date a United States Magistrate appointed Myron H. Garner to represent him. On August 29, 1979, Garner met with the Assistant United States Attorney assigned to the case, Jay Ethington. After discussing the possibility of a plea bargain (but before any agreement was reached), Garner and Ethington went to the trial judge's chambers, and the judge agreed to speak with them. In the ensuing meeting in the court's chambers, Garner explained to the judge that Adams is a paraplegic; he is paralyzed below the waist as the result of a gunshot wound received on August 15, 1979. The judge then indicated that, because of Adams' condition, she felt a probated sentence would be appropriate.[1]

Subsequent to this meeting, Garner and Ethington reached an agreement pursuant to which Adams was to plead guilty to one of the counts under section 843(b) and the government was to go along with a probated sentence. Adams agreed to enter a plea of guilty under these circumstances, and consented to an interview with a United States probation officer who was asked to compile a pre–sentence report on Adams. Trial Transcript at 33 and 41.

A pre–arraignment hearing was held on August 30, 1979 (the day after the meeting in the court's chambers), at which time Garner anticipated that Adams would plead guilty. The arraignment itself was postponed until such time as Adams would be well enough to come to court and the pre-sentence report would be completed. Trial Transcript at 4.

Adams appeared in court on October 11, 1979, however, and pled not guilty to all counts. The record indicates that at this time the government was willing to go through with its part of the plea bargain, but that the judge had already rejected the deal because of the probation officer's recommendation that Adams receive a prison term. The pre–sentence investigation had disclosed that Adams had already served four felony prison terms, three in Texas penitentiaries and one in a federal penitentiary. The following colloquy took place at the arraignment:

MR. ETHINGTON: First, Mr. Garner here has worked very diligently in this case. He has spent quite a bit of time and quite a bit of time I will say bothering me, reviewing evidence and negotiating the case and we reached an agreement after discussing with your honor what to do with this defendant because of his medical condition and–

THE COURT: Well, I refused that, Mr. Ethington.

1. Since this meeting was off the record, it is not possible to discern the precise nature of the judge's statements to counsel at this time. According to Garner's version of the meeting (recounted at the outset of the trial, on January 21, 1980, when Garner moved to enforce the purported plea bargain), the judge stated that she would not send Adams to the penitentiary; and, according to Garner's version, she did not condition her intentions on the receipt of a pre–sentence report or on any other prospective event. Trial Transcript at 29–37. Ethington agreed with Garner's version of the judge's statements during the meeting. Trial Transcript at 37. The judge provided a different version, however, during Adams' first arraignment, on October 11, 1979. The judge recounted at that time that her representations to counsel in the August 29 meeting in her chambers had been only that she would sentence Adams on the same day she took his plea (if he pled guilty) and that "in all probability I would put him on probation." Trial Transcript at 9, as quoted in text infra.

MR. ETHINGTON: Pardon me.

THE COURT: I have refused that. The thing that I said that I would do and the only thing I said I would do would be to sentence him on the same day that I took his arraignment if his plea was guilty and at that time I told you and Mr. Garner that in all probability I would put him on probation, but now I have talked with the probation officer and the probation officer is not going to recommend probation and therefore I wanted to find out from the defendant whether or not he wanted to plead guilty or not guilty because the probabilities are I would follow the recommendation of the probation officer.

MR. ETHINGTON: Well, Judge, his plea of guilty or not guilty here this morning is determined by what the court's attitude is for his punishment. I feel like he would plead guilty if the court—

THE COURT: If I would promise that I would put him on probation he would plead guilty. I am not going to promise him that.

Trial Transcript at 8–9. Unfortunately, it is not clear precisely when the judge rejected the agreement; her statements at this arraignment suggest that there may have been some off–the–record communication with counsel (in which she rejected the bargain) between the pre–arraignment hearing on August 30 and the arraignment on October 11.

The record leaves a somewhat greater gap, however, between the October 11 arraignment and a second arraignment, which took place on November 21, 1979. Sometime during this period Adams appears to have changed his mind and decided to plead guilty. The judge, the prosecutor and Adams' counsel all expected Adams to change his plea to guilty at the second arraignment, and after a reading of the indictment the judge explained the charges against Adams and the rights which he would waive by a plea of guilty. Trial Transcript at 11–16. Adams appears to have surprised all concerned when he then pled not guilty.

At that point the judge made the following statements:

THE COURT: Not guilty? I thought after my full explanation to you the other day that you had decided that you would plead guilty. Now, which is it that you want to do?

(The defendant consulted with his attorney.)

THE COURT: Which is it that you want to do? You understand that if you are tried you will be tried not only on those two counts but you will be tried on the counts of conspiracy to distribute heroin which carries a fifteen year sentence and a twenty–five thousand dollar fine if it is your first offense and if it is your second offense thirty years in the penitentiary and a fifty thousand dollar fine or both. Now, what is it you want to do?

(Pause in proceeding while defendant consulted with his attorney.)

THE COURT: Jackie, when will it be tried?

MRS. JOHNSON: January 21st.

THE COURT: You will recall, Mr. Adams—

MR. ADAMS: Yes, Ma'am.

THE COURT:–that I have already told you that if you plead guilty I would sentence you to four years on one count and that I would sentence you to probation on the next count to run consecutive. Now, you already know what the sentence is going to be but if you don't want to accept that we will try the case on January the 21st.

MR. ADAMS: Yes, Ma'am.

THE COURT: Take him out. I am not going to bother with him any more.

Trial Transcript at 16–17. The judge seems to have spoken to Adams or to his counsel off the record sometime between the first arraignment, on October 11, and the second arraignment, on November 21. She refers to "my full explanation to you the other day," yet no explanation–except for the court's rejection of the plea bargain calling for probation, quoted *supra*–appears anywhere in the record prior to November 21.

The important fact, however, is that at some point the judge did speak with Adams or his counsel long enough to offer him a new deal: if he would plead guilty to two of the counts, she would sentence him to consecutive sentences of four years' imprisonment on one count and four years' probation on the other.

Adams apparently rejected this deal, for he pled not guilty to all charges on November 21. The prosecution then decided to proceed only on the three counts under section 843(b), and the conspiracy count under section 841(a)(1) was therefore dismissed at trial. Adams was tried before a jury between January 21 and January 23, 1980, and was found guilty of all three counts under 21 U.S.C. § 843(b). On February 8, 1980, the trial court sentenced Adams to serve consecutive four year prison terms on each of these counts.

There is no suggestion in the record that Adams' trial was unfair in any way or that the evidence against him was insufficient. Roger J. Johnson, an undercover agent of the Drug Enforcement Administration, testified in some detail to the transactions between himself and Adams which occurred in late 1978 and early 1979 and led to the indictment. Johnson testified that he had originally sought to purchase heroin from Adams, while Adams was staying briefly in Los Angeles in late 1978; that his investigation had aided California state drug enforcement officers in their independent investigation of Adams, which resulted in a search warrant for Adams' Los Angeles residence and ultimately in a California indictment against Adams on drug charges; that Adams thereafter contacted Johnson, seeking to purchase heroin for distribution in Dallas; that Johnson agreed to sell forty ounces of heroin to Adams, and to transport it to Dallas; and that he spoke with Adams by telephone about the pending transaction on April 3, 6 and 7 (the conversations for which Adams was indicted under section 843(b)). The government then introduced a tape recording of the April 6 conversation, and called several other witnesses to corroborate Johnson's story. Dennis C. Zeuner, a Los Angeles Police Officer, testified to his department's role in the investigation of Adams, and identified several pieces of physical evidence that were retrieved from Adams' Los Angeles residence pursuant to the search warrant; these included a syringe and other drug paraphernalia, a plane ticket from Dallas to Los Angeles in Adams' name, and several packets of a brown powdery substance. Richard Ruybal, a forensic chemist for the Drug Enforcement Administration, testified that, as a result of tests conducted that morning, the powder could be identified as heroin. Finally, Richard W. Hatler, a Dallas Police Officer, testified to the Dallas Police Department's investigation of Adams, thereby corroborating several details in Johnson's story. At the conclusion of the government's case, the defense rested without introducing any evidence.

## II. ADAMS' RIGHT TO ENFORCE HIS PLEA BARGAIN

Adams' sole argument on appeal is that he is entitled to have his plea agreement with the prosecutor specifically enforced. It is true that in some instances courts have ordered specific performance of plea bargains in order to enforce promises made by the government. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979); *United States v. Bowler*, 585 F.2d 851 (7th Cir. 1978); *Geisser v. United States*, 513 F.2d 862 (5th Cir. 1975), *on appeal after remand*, 554 F.2d 698 (5th Cir. 1977), *on appeal after remand*, 627 F.2d 745 (5th Cir. 1980). But the record in this case shows that the prosecutor was willing to go through with his part of the bargain, and that it was the trial judge who rejected the agreement. *See* part I of this opinion, *supra*.[2]

**2.** It is arguable, on the basis of the record, that the trial judge was herself a party to the plea bargain which called for Adams' probation. *See supra* note 1. Rule 11(e) does not, however, authorize the judge to offer a plea bargain to the defendant. The judge may only accept or reject an agreement *already* reached by the defendant and the prosecutor. Rule 11(e)(2).

Federal Rule of Criminal Procedure 11(e), which dictates the procedure for the negotiation and acceptance of plea bargains, allows the trial judge to accept or reject the plea agreement made between the prosecutor and defendant. Although it provides a specific procedure for a statement in open court of the terms of the agreement and for notice by the court of its decision, the rule does not in any way limit the judge's discretion in deciding whether to accept a plea agreement. We have held that this discretion is governed by the same broad principles as govern the trial judge's discretion in sentencing. *United States v. Ocanas*, 628 F.2d 353 at 357–358 (5th Cir. 1980); *United States v. Bean*, 564 F.2d 700, 703–704 (1977). *See also United States v. Sanchez*, 609 F.2d 761 (5th Cir. 1980); *United States v. Ellis*, 547 F.2d 863, 868 (5th Cir. 1977); *United States v. Navedo*, 516 F.2d 293 (2d Cir. 1975). We have not decided precisely what circumstances may cause the refusal of a plea bargain to be an abuse of discretion, but we have found that a refusal of a plea bargain may be based on the court's belief that the defendant would receive too light a sentence under the circumstances. *United States v. Bean, supra.* In this case the trial judge appears to have rejected the agreement because of the defendant's previous criminal record; under the circumstances, she did not believe that probation would be an adequate sentence. We conclude, therefore, that Adams' plea bargain was rejected by the trial court within the sound exercise of its discretion.

### III. THE JUDGE'S PARTICIPATION IN PLEA DISCUSSIONS

Federal Rule of Criminal Procedure 11(e)(1), which allows the government and the defendant to negotiate a plea bargain, ends with the following explicit sentence: "The court shall not participate in any such discussions." This rule has been interpreted as an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process. As the Court of Appeals for the Second Circuit explained in *United States v. Werker*, 535 F.2d 198, 201 (2d Cir.), *cert. denied*, 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976):

> Rule 11(e)(1) states categorically: "(t)he court shall not participate in any such discussions." The commentaries regarding this injunction, and consideration of its intendment, leave no room for doubt that its purpose and meaning are that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement.

535 F.2d at 201 (citations omitted). The prohibition stated in Rule 11(e)(1) is necessarily absolute because of the role required of the judge once an agreement is reached: the court must decide for itself whether to accept or reject the plea bargain. Fed.R. Crim.P. 11(e)(2). Statements and suggestions by the judge are not just one more source of information to plea negotiators; they are indications of what the judge will accept, and one can only assume that they will quickly become "the focal point of further discussions." *United States v. Werker, supra* at 203. On this basis the Second Circuit granted in *Werker* a writ of mandamus prohibiting a district court from disclosing in advance the sentence it intended to enter if a guilty plea were entered, even though the district court did not itself negotiate or encourage such a plea. Rule 11 contemplates an active role for the trial judge once the plea agreement is reached by the parties and disclosed in open court (or, upon a showing of good cause, in camera); prior to that time, however, the judge must refrain from all forms of plea discussions. *See Frank v. Blackburn*, slip op. at 1317–18; *United States v. Brighton Building & Maintenance Co.*, 431 F.Supp. 1115 (N.D.Ill.1977) (district court refused, because of Rule 11(e)(1), to grant a motion requesting a severance and reassignment to another judge, where stated purpose of the motion was to facilitate the entry of related plea bargains before a single judge); Notes

of the Advisory Committee on Rules, Fed.R. Crim.P. 11, 18 U.S.C.A. at 25 (1975).[3]

Although the details of the trial judge's participation in the negotiations leading to Adams' plea are unclear, the record leaves no doubt that there was a substantial violation of this prohibition. Unfortunately, Adams does not raise this issue on appeal; the two–page argument in his brief does not even mention Rule 11. The record discloses, however, that the trial judge participated in plea discussions on at least two occasions. First, she discussed the bargain with Garner and Ethington *before* the two had reached an agreement, in a meeting in her chambers on August 29; although the precise nature of her comments are unclear, the record shows that she at least approved (if only tentatively) an arrangement whereby Adams would plead guilty and would be placed on probation. Second, sometime before Adams' second arraignment, on November 21, 1979, the judge offered a plea bargain to Adams on her own initiative, *i. e.*, that he plead guilty to two counts in exchange for four years' imprisonment on one and four years' probation on the other. *See* Part I of this opinion, *supra.*

■ We believe that the judge's participation in the discussions which preceded Adams' plea constitutes plain error sufficient for this court to raise the issue *sua sponte*, pursuant to Fed.R.Crim.P. 52(b). " 'In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial

proceedings.' " *Silber v. United States*, 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962), *quoting United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). *See United States v. Musquiz*, 445 F.2d 963, 966 (5th Cir. 1971); 3 C. Wright, *Federal Practice & Procedure* § 856 (1969). This case involves just such "exceptional circumstances." The trial court's violation of Fed.R.Crim.P. 11(e)(1) is obvious on the face of the record and, as our discussion below indicates, surely affects "the fairness, integrity or public reputation of judicial proceedings." Of course, the record does not indicate that Adams was actually prejudiced by the judge's participation in plea discussions, in either his trial or his sentencing. Our decision is not, however, based on a showing that Adams' rights have been substantially violated. Our result is reached, instead, on the basis of our supervisory power over the district courts. The Supreme Court has specifically exercised its supervisory power over the lower federal courts in order to enforce the provisions of Rule 11 in the absence of a showing of actual prejudice. *McCarthy v. United States*, 394 U.S. 459, 464, 89 S.Ct. 1166, 1169–1170, 22 L.Ed.2d 418 (1969). The exercise of this supervisory power is not, moreover, limited to the Supreme Court. "It is now well settled that the Courts of Appeals, as well as the Supreme Court, have such supervisory control of the district courts as is necessary to 'the administration of criminal justice in the federal courts.' " *Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966). *See La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957).

---

3. In addition to Rule 11, the Constitution will in some instances limit the role of trial judges in the plea bargaining process. Thus, for example, due process requires that judicial participation in plea negotiations not be so great as to render a guilty plea involuntary. *E. g., Frank v. Blackburn*, No. 78–3452 (5th Cir., Nov. 17, 1980) (*en banc*); *Toler v. Wyrick*, 563 F.2d 372, 373 (8th Cir. 1977); *Brown v. Peyton*, 435 F.2d 1352 (5th Cir. 1970); *United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244 (S.D.N.Y.1966); *United States v. Tateo*, 214 F.Supp. 560 (S.D.N.Y.1963). *But see*

*Frank v. Blackburn, supra*, slip op. at 1325–26. Our decision does not, however, rest on constitutional rights. We rely instead on Fed.R. Crim.P. 11, which prescribes the procedure for the negotiation and acceptance of plea bargains in the *federal* courts. Rule 11 does not bind the states, *Frank v. Blackburn, supra*, slip op. at 1320–21; *Blackmon v. Wainright*, 608 F.2d 183 (5th Cir. 1979), and therefore we intimate no views on such limitations on judicial involvement in plea bargaining as may restrict *state* judges.

In order to determine how the district court's error can be remedied by this court, we must reach an important question of first impression: What remedies, if any, are appropriate to a violation of Rule 11(e)(1)'s prohibition of judicial participation in plea discussions, where, as here, the defendant has not pled guilty and there is no showing of actual prejudice at his trial or sentencing?

Although this specific question has not been decided, the Supreme Court has determined the appropriate remedy for a more common violation of Rule 11. In *McCarthy v. United States, supra*, the Supreme Court decided that a defendant whose guilty plea to a tax evasion charge had been taken in a court procedure which did not fully comply with Rule 11 was entitled to withdraw his plea even absent a showing of actual prejudice. McCarthy argued, *inter alia*, that the trial court had not, as Rule 11 requires, personally addressed him to determine that the plea was made voluntarily and with an understanding of the nature of the charge. The government argued that McCarthy had not been prejudiced, however, since he had personally stated his desire to plead guilty and had been informed of the consequences of his plea. The Court rejected the government's position:

> We cannot accept this argument, which completely ignores the two purposes of Rule 11 and the reasons for its recent amendment. First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post–conviction attacks on the constitutional validity of guilty pleas.

394 U.S. at 465, 89 S.Ct. at 1170 (footnotes omitted). The Court emphasized that these purposes would be served despite the fact that McCarthy had been unable to show that his plea had been actually involuntary or unknowing. Although McCarthy had been unable to convince the courts below that his plea was in any way invalid, it was at least conceivable that he had intended only to admit that he owed the government the money it claimed (and not to admit the intent requirement of the crime), and it was also possible that if McCarthy had been adequately informed he would have concluded that he was guilty only of one of two lesser included offenses. Full compliance with Rule 11 would have insured that such misunderstandings had not occurred, and would have provided a detailed record for appellate review. 394 U.S. at 470–71, 89 S.Ct. at 1172–1173.

In short, Rule 11 creates a prophylactic scheme designed to insure both that guilty pleas are constitutionally made and that a full record will be available in the event that a challenge is made to the plea. On this basis the Court concluded as follows:

> [P]rejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea. Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

394 U.S. at 471–72, 89 S.Ct. at 1173–1174. *McCarthy* dictates strict compliance with

the terms of Rule 11 in order to insure in the most practical and direct way that guilty pleas taken in federal courts will be constitutionally valid and that a complete record will be created for appellate review. *McCarthy* does not hold that any provision in Rule 11 or any particular remedy for its violation is constitutionally required; the decision is based solely on the Court's construction of Rule 11 and made pursuant to the Court's supervisory power over the lower federal courts. 394 U.S. at 464, 89 S.Ct. at 1169–1170.

At the time *McCarthy* was decided, Rule 11 was a relatively short pronouncement aimed at a small number of core concerns, all involving the validity of guilty pleas. *McCarthy v. United States, supra* at 462 n.4, 89 S.Ct. at 1169 n.4. Thus, the Rule required the district court to (1) personally address the defendant to determine whether the plea was made voluntarily; (2) personally address the defendant to determine whether the plea was made with an understanding of the charges and of the potential consequences; and (3) satisfy itself (not necessarily by addressing the defendant) that a factual basis existed for the plea. Rule 11 has since been expanded, however, to more than ten–fold its length at the time of *McCarthy*; it now requires not only a general inquiry by the court into the Rule's core concerns, but prescribes in addition a number of specific statements to be made to the defendant and questions to be asked of him. Fed.R.Crim.P. 11(c), (d) and (f). Only recently, in *United States v. Dayton*, 604 F.2d 931 (5th Cir. 1979) (*en banc*), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980), we considered the applicability of *McCarthy* to this much expanded form of Rule 11. We determined that only a neglect of one of the Rule's core concerns (*i. e.*, lack of coercion, comprehension of the charge, and knowledge of the plea's direct consequences) would mandate a right to replead in the absence of a showing of actual prejudice. 604 F.2d at 940. *See United States v. Almaguer*, 620 F.2d 557, (5th Cir. 1980); *United States v. Caston*, 615 F.2d 1111 (5th Cir. 1980). Thus, the defendant's right to replead because of the

trial court's failure to comply with Rule 11 depends, at least in the Fifth Circuit, on the nature of the violation: if the trial court entirely fails to inquire into one of Rule 11's core concerns, the defendant is entitled to withdraw his guilty plea even in the absence of a showing of actual prejudice; but if the trial court fails only to make one of the statements or ask one of the questions required by the post–*McCarthy* additions to the Rule, then the defendant will be entitled to withdraw his plea only if the Rule's core concerns have not "been sufficiently exposed to inquiry and determination," and we will accept the factual findings of the district court regarding those concerns unless such findings are clearly erroneous. *Id.*

Taken together, *McCarthy* and *Dayton* provide a basis for determining the appropriate remedies to violations of Rule 11. In order to further the prophylactic scheme established by the Rule and to insure the most effective and efficient appellate review of purported violations, *McCarthy* requires that defendants whose guilty pleas are taken in procedures not fully in compliance with Rule 11 be allowed to replead, without having to show that actual prejudice results from the violation of the Rule. But in order to avoid an "iron rule of review directed at technical and literal compliance" with the many post–*McCarthy* additions to Rule 11, we have held that *McCarthy*'s strict enforcement is not mandated where the Rule's "core concerns" are adequately addressed. *United States v. Dayton, supra* at 940.

■■■ The violation at issue in this case involves a provision included in Rule 11(e), which was added to Rule 11 in 1974, *after* the Supreme Court's decision in *McCarthy*. But the application of *McCarthy* to violations of Rule 11(e)(1)'s prohibition of judicial participation in plea discussions is not difficult, at least where the defendant has pled guilty and seeks only to withdraw his plea. That prohibition serves to strengthen the prophylactic scheme established by Rule 11 and enforced by *McCarthy*, that is, it helps to insure that involuntary, unknowing and unfounded guilty pleas will not be en-

tered. As the District Court for the Southern District of New York has explained in an often–quoted passage:

> The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not.

*United States ex rel. Elksnis v. Gilligan, supra* at 254. *See Frank v. Blackburn, supra,* slip op. at 1318; *Blackmon v. Wainwright, supra* at 184; *United States v. Werker, supra* at 201–03; Notes of the Advisory Committee on Rules, Fed.R.Crim.P. 11, 18 U.S.C.A. at 25 (1975). For this reason judicial participation in plea negotiations is prohibited as a constitutional matter when it is so great as to render a guilty plea involuntary. *See supra* note 3. But Rule 11 goes farther than the constitutional restriction, for Rule 11(e)(1) establishes an absolute ban on judicial participation. This strict rule is necessary if the system established by Rule 11 is to function in those cases in which pleas are negotiated. Rule 11 emphatically makes it the responsibility of the trial judge to test the validity of the bargain which results from plea negotiations: the judge is required systematically to inquire into the defendant's understanding and intention, to examine the factual basis of the plea, and to explain to the defendant the charges against him, the maximum penalties he faces, and the rights he will waive by a plea of guilty. This framework requires the greatest possible assurance of judicial neutrality, for the parties to the agreement cannot generally be expected to test the validity of the plea themselves. When a plea bargain is presented to the court, neither the defendant nor the government has an incentive to argue that the plea is involuntary, unknowing or unjustified by the facts: both have already agreed to the bargain and are in court to seek its acceptance.

It is up to the judge, therefore, to take an active role in insuring that Rule 11's core concerns are adequately dealt with. We cannot truly expect this role to be filled by a trial judge who has participated in discussions leading to a plea bargain, for such a judge may (as discussed below) feel a personal stake in the acceptance of the plea or have a preconceived notion of its validity. Moreover, the judge may, in the course of plea discussions, commit himself or herself to a particular bargain before he or she has all of the relevant information; many important facts (including those disclosed in the pre–sentence investigation) are not known before the plea agreement is officially presented to the court. *United States v. Werker, supra* at 204. Judicial participation in plea negotiations is, therefore, necessarily inconsistent with the role the judge is required to assume under Rule 11. It follows that, if *McCarthy's* strict enforcement of Rule 11 is to be followed, a defendant who has pled guilty after the judge has participated in plea discussions should be allowed to replead, without having to show that actual prejudice has resulted from the participation.

We do not believe, moreover, that *Dayton* requires a different result. The ban on judicial participation in plea discussions is not a "technical" amendment to the Rule, as are, for example, the detailed explanations required of the judge by Rule 11(c). The ban is, rather, an attempt to insure the vital neutrality of the trial judge. If the judge is in fact so affected by his or her participation in plea discussions that he or she cannot reasonably play the active and unbiased role required by Rule 11, then the functioning of the Rule as a whole–including, of course, its "core concerns"–is necessarily implicated. Rule 11(e)(1)'s prohibition of judicial participation in plea negotiations is analogous to the requirement, in Rule 11(g), that a verbatim record be made of all guilty plea proceedings. Although Rule 11(g) was added to Rule 11 after the Supreme Court's decision in *McCarthy*–in fact, it was added in 1974, along with Rule 11(e)–we held in *Dayton* that the failure to

make such a record allows the defendant to replead without having to demonstrate actual prejudice. *United States v. Dayton, supra* at 938–39. A verbatim record of plea proceedings and the abstention of the judge from plea discussions are both necessary if the protective scheme established by Rule 11–including an inquiry into the Rule's core concerns–is to function at all, and therefore *McCarthy's* strict compliance with the terms of Rule 11 is called into service in both cases.

The applicability of *McCarthy* and *Dayton* is not, however, so clear where the defendant has in fact pled not guilty and received a full trial. *McCarthy* and *Dayton* were concerned with the remedy available to defendants who sought to *withdraw guilty pleas*; the issue, in both cases, was "how trial courts should conduct guilty plea hearings and how we review those proceedings." *United States v. Dayton, supra* at 934. Adams, of course, pled not guilty; he received a full jury trial and was subsequently sentenced by the judge to serve three consecutive four–year prison terms. The issue in this case, therefore, is whether the trial judge's violation of Rule 11(e)(1)'s ban on judicial participation in plea discussions entitles a defendant *who has had a full trial* to any relief, in the form of either a new trial or resentencing before a different judge, in the absence of a showing of actual prejudice.

To begin with, the explicit rationale of *McCarthy* does not appear to mandate that the defendant who has pled not guilty be given either a new trial or a new sentencing hearing on the mere showing of a violation of Rule 11(e)(1). As discussed above, *McCarthy* relies on two separate purposes behind Rule 11: first, it is a prophylactic scheme designed to prevent unconstitutional guilty pleas; second, it requires that a detailed record of guilty plea proceedings be made, in order to facilitate appellate review and prevent frivolous attacks on guilty pleas. Neither of these purposes would be furthered by a new trial or a new sentencing hearing in this case, as no guilty plea is at issue.

The ban on judicial participation in plea discussions was not, however, added to the Rule solely to further the explicit purposes discussed in *McCarthy*, for the ban also serves to avoid two serious risks in the subsequent trial and sentencing of a defendant who pleads not guilty. In the first place, judicial participation in plea negotiations is likely to impair the trial court's impartiality. The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement (and in the quick disposition of the case made possible by the bargain) and may therefore resent the defendant who rejects his advice. "[W]e [cannot] fail to consider the subtle pressures that may be exercised by a judge against a defendant who rejects an opportunity, presented by such a response as the judge here proposes to make, the acceptance of which may relieve the judge of a lengthy trial." *United States v. Werker, supra* at 202. Moreover, the defendant is likely to make incriminating concessions during the course of plea negotiations. At the very least, he may implicitly concede his guilt by the very act of negotiating a guilty plea. Having failed to strike a deal with the prosecutor, however, a defendant ordinarily has the option of proceeding to trial before a judge and jury who were not parties to the plea negotiations. The defendant loses this alternative when the judge becomes a participant in the plea bargaining process, for the judge will then have heard for himself the confessions–both implicit and explicit–arising from the defendant's participation in plea negotiations. *See United States v. Werker, supra* at 202, 204; Note, "Plea Bargaining and the Transformation of the Criminal Process," 90 *Harv.L. Rev.* 564, 584–85 (January, 1977); W. S. White, "A Proposal for Reform of the Plea Bargaining Process," 119 *U.Pa.L.Rev.* 439, 452–53 (1971). Of course, there is some danger to judicial impartiality whenever a judge presides over a trial after rejecting a plea bargain, even where done in full compliance with Rule 11, for the judge is at least aware of the defendant's willingness to plead guilty. *See United States v. Gallington*, 488 F.2d 637, 639 (8th Cir. 1973),

*cert. denied,* 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974), (a trial judge may excuse himself from further involvement with the case after rejecting a plea, but absent a showing of actual prejudice the choice is within the discretion of the judge). The risks to impartiality are, however, greatly multiplied when the judge participates in the negotiations leading to that bargain, for the judge thereby takes on a more personal role in the negotiations and hears for himself the incriminating statements made by the defendant.

In the second place, judicial participation in plea discussions creates a misleading impression of the judge's role in the proceedings. "As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant." *United States v. Werker, supra* at 203. One result, as we have stated before, is the demeaning of the trial court, for the resultant guilty plea and sentence may "carry the connotation of an unseemly bargain between a malefactor and Justice." *Frank v. Blackburn, supra,* slip op. at 1318; *Brown v. Beto,* 377 F.2d 950, 956–57 (5th Cir. 1967). But the misleading impression created by judicial participation in plea discussions has a more immediate impact on defendants who fail to reach an acceptable bargain with the prosecutor: some defendants may be led to believe, as a result of judicial statements suggesting or approving a particular bargain, that they are entitled to that particular deal despite the fact that the prosecutor has not agreed to the bargain or the court has not formally accepted it. The trial court must never forget that it is the focal point of plea negotiations, and that any indication to counsel may be taken as an official action of the court. Since Rule 11 does not contemplate judicial participation in plea "discussions," whatever statements are in fact made by the judge during the course of such negotiations may be mistaken as an official "acceptance" pursuant to Rule 11(e)(3). We need go no farther than the case at bar to see the reality of the misimpression created by judicial participa-

tion in plea discussions: Adams' appeal is not based on the court's violation of Rule 11(e)(1), but seeks instead to enforce a plea bargain purportedly agreed to by the court.

The explicit Rule 11 purposes discussed in *McCarthy* do not involve these dangers to defendants who plead not guilty after unsuccessful plea negotiations in which the judge has participated. There are underlying rationales, however, behind both of the purposes expounded in *McCarthy,* and these rationales provide valuable guidance to the issue now before us. First, *McCarthy* relies on the prophylactic nature of the scheme established by Rule 11. The purpose of the Rule, in the context of guilty pleas, is not to provide a remedy to defendants who have made involuntary, unknowing or unfounded guilty pleas, for the Constitution already provides such a remedy; the Rule was established, instead, to *prevent* such pleas from ever being made, and that purpose is served by strict compliance with the terms of Rule 11. Second, *McCarthy* relies on the need for a full record of guilty plea proceedings in order to facilitate effective and efficient judicial review. The Court emphasized, in this regard, the tremendous waste of judicial resources that was caused both by frivolous appeals from guilty pleas and by the difficulty of appellate review in the absence of a complete record. Abstracted from the precise issue before the Court in *McCarthy,* therefore, two important factors appear to have guided the Court in its determination of appropriate remedies to violations of Rule 11: the prophylactic nature of the scheme established by the Rule, and the impact on judicial effectiveness and economy engendered by strict compliance with the Rule. These rationales are as relevant to the case now before us as they are to the issue decided in *McCarthy,* for together they serve to balance the need for the protective scheme prescribed in Rule 11 against the judicial burden of strict (or lax) enforcement of the Rule.

To begin with, Rule 11(e)(1)'s ban on judicial participation in plea discussions does serve important prophylactic purposes even

in cases in which the defendant pleads not guilty: it helps to insure that the trial judge is impartial throughout the defendant's trial and sentencing, and avoids the dangers implicit in the court's misrepresentation of its role in plea negotiations.

There is an important distinction, however, between a new trial and resentencing: the defendant is far more likely to need the protection of a preventative rule with respect to his sentencing than with respect to his trial. The Supreme Court emphasized, in *McCarthy*, that a preventative rule was necessary because of the difficulty in attacking guilty pleas in subsequent proceedings:

> [T]he Government will undoubtedly rely upon the defendant's statement that he desired to plead guilty and frequently a statement that the plea was not induced by any threats or promises. This prima facie case for voluntariness is likely to be treated as irrebuttable in cases such as this one, where the defendant's reply is limited to his own plaintive allegations that he did not understand the nature of the charge and therefore failed to assert a valid defense or to limit his guilty plea only to a lesser included offense. *No matter how true these allegations may be, rarely, if ever, can a defendant corroborate them in a post–plea voluntariness hearing.*

*McCarthy v. United States, supra* 394 U.S. at 469, 89 S.Ct. at 1172 (emphasis added). Insofar as a defendant seeks to challenge the sentencing decision, much the same problem can be said to exist. Sentencing hearings are relatively short and typically involve no detailed record and no rulings by the court other than the sentencing itself; it would be particularly difficult, therefore, to demonstrate an actual want of impartiality on the part of the judge. A defendant who seeks a new trial, however, is in an altogether different position: he is likely to have a detailed record of the trial proceedings, in which a number of important judicial decisions are made. It is, therefore, somewhat more reasonable to expect a defendant to demonstrate that he was prejudiced during the course of a trial than during the course of a sentencing hearing.

The difference between the two remedies is accentuated by the second underlying rationale of *McCarthy*, that is, the effect of strict compliance on judicial effectiveness and economy. It is true that strict enforcement of Rule 11(e)(1)–either by ordering a new trial or by ordering a new sentencing hearing–would do little to aid appellate review: a full record of both the trial and the sentencing hearing will ordinarily exist whether or not the trial judge participated in plea negotiations. But the two remedies differ greatly in the judicial costs they entail at the district court level. A new trial involves a substantial investment in judicial resources, particularly where, as here, a number of witnesses must be recalled. On the other hand, resentencing involves a relatively small investment in judicial resources: the pre–sentence report has already been completed, no witnesses need be re–called, and argument by the parties can be expected to be considerably less involved than a new trial.

To sum up: in the absence of a showing of actual prejudice, a new trial is unnecessary as part of the protective scheme prescribed by Rule 11(e), but would entail serious costs in judicial resources. On the other hand, a new sentencing hearing would provide an important measure of protection against judicial participation in plea discussions, and entail little costs in judicial resources. Taken together, these factors lead us to the conclusion that a defendant who has pled not guilty after unsuccessful plea discussions in which the judge has participated, but who makes no showing of actual prejudice as a result of the judge's participation, should not receive a new trial but should be resentenced before a different judge. We intimate no belief as to the actual impartiality of the district court judge who heard this case, or as to the propriety of the sentence she rendered. Our remand for resentencing before a different judge is intended, instead, to extend the prophylactic scheme established by Rule 11 in order to protect defendants from the potential (but difficult to prove) effects of

judicial participation in plea negotiations, and to prevent to the greatest practical extent the misimpression created by such participation.

We affirm Adams' convictions, rendered on January 23, 1980, on the three counts under 21 U.S.C. § 843(b). We reverse the judgment of the district court entered on February 8, 1980, sentencing Adams to three consecutive four–year prison terms. We remand this case for reassignment to a judge other than the one who heard this case initially, for a new determination of Adams' sentence.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.