[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13299
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cr-00487-WKW-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAQUANDA GILMORE GARROTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 1, 2020)

Before WILLIAM PRYOR, MARTIN, and LUCK, Circuit Judges.

PER CURIAM:

After she was convicted of eight counts of aiding and assisting in the filing of false federal income tax returns, Laquanda Garrott was sentenced to seventy-

two months' imprisonment.  On appeal, she asks us to vacate her conviction because the district court participated in plea negotiations and her sentence because it was substantively unreasonable.  We affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

An investigation by the Internal Revenue Service revealed that Garrott, who operated a small tax return preparation business, falsified and submitted around one hundred tax returns on behalf of her customers.  She received nearly $675,000 from the Treasury as a result of the false returns.  The government charged Garrott with ten counts of aiding and assisting in the filing of false federal income tax returns, in violation of 26 U.S.C. § 7206(2).

Almost a year after the charges were filed, Garrott and the government entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A).[1] Pursuant to the agreement, Garrott would plead guilty to one count, and the government agreed to dismiss the remaining nine counts.  The maximum sentence would have been three years' imprisonment.  See 26 U.S.C. § 7206.  A magistrate judge accepted the plea agreement, and the district judge set a date for the sentence hearing.

---

[1] Rule 11(c)(1)(A), in relevant part, provides: "If the defendant pleads guilty . . . to . . . a charged offense . . . , the plea agreement may specify that an attorney for the government will . . . move to dismiss[] other charges."  If the district court accepts a plea agreement under this rule, it is bound by its terms.  Fed. R. Crim. P. 11(c)(4).

Before the sentence hearing, however, Garrott was arrested for violating the conditions of her pretrial release by failing to pay rent and thus acquiring further debt without the permission of her pretrial release officer.  The district court found that Garrott violated her pretrial release conditions, revoked her bond, and placed her in custody pending sentencing.

At the scheduled sentence hearing, the district court rejected Garrott's plea agreement:

> So we are facing, per charge—or at least per the charge of conviction, if I accepted the plea agreement, a statutory maximum of [thirty-six] months.  The reason I don't accept and will not accept the plea agreement at the moment—I might sentence within that; I just . . . won't be bound to it—is because of the extensive criminal history, over 11 years, of—well many years, with [seventy-nine] bad check cases over the last 11 years and other offenses and I think some more recent ones I didn't know about.
>
> So for that reason, Ms. Garrott, I am rejecting the plea agreement at this time in your case.  And the provision I'm particularly rejecting is the dismissal of all the charges except for the one count.

In a follow-up memorandum, the district court explained that it rejected the plea agreement because it compelled an "unreasonable sentence."  Garrott had an "extensive criminal history, including no less than eighty-seven previous convictions,"[2] the district court noted, and that, "[w]ith a total offense level of

---

[2] Garrott had seventy-nine convictions for writing bad checks, four for theft, one for reckless endangerment, one for domestic violence and harassment, one for giving a false name to law enforcement, and one for driving with a revoked license and using a license plate to conceal one's identity.

[twenty-two] and a criminal category of III, [her] guidelines range would have been [fifty-one] to [sixty-three] months, without an acceptance-of-responsibility reduction." But the plea agreement, the court recognized, "limit[ed] Garrott's sentence to no more than the statutory maximum of [thirty-six] months' imprisonment." The court emphasized that, according to the sentencing factors set forth in 18 U.S.C. § 3553(a), it had a "duty to impose a sentence sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing.'" Considering these factors and Garrott's "history and characteristics," the court determined that "a sentence of [thirty-six] months would not merely be unreasonable but would be outright irrational"—especially because Garrott had served only thirteen days in custody total for her prior convictions. Her prior conduct, the court continued, was "rife with falsity and fraud" and "demonstrate[d] the impropriety of a [thirty-six]-month sentence." Aside from Garrott's criminal history, the court observed that her "relevant conduct, according to the presentence report, [was] much more serious than the ten pending charges suggest"; she had "filed approximately 100 false tax returns—totaling $674,372 in fraudulent refunds—which were all paid out by the IRS." With "all ten counts in play," the court said that Garrott could "potentially be facing a [thirty]-year maximum sentence."

The court stated that it was "express[ing] no view on either the weight or the nature of the evidence against Garrott or what sentence Garrott would receive if she

4

were found guilty on some or all of the ten counts." It noted that it could, however, "express its view that a particular sentence [was] too lenient." The court stressed that it was "declin[ing] to say what an appropriate sentence [was]" and, instead, was "only say[ing] that [thirty-six] months' imprisonment [was] <u>inappropriate</u>." Finally, in a footnote, the district court informed the parties that another binding plea agreement—whether under rule 11(c)(1)(A) or (C)[3]—"would most likely be viewed as a guess as to what the judge is thinking, or bait to catch the best deal." The district court said it would keep "an open mind as to what constitute[d] a reasonable sentence." Following the memorandum, Garrott withdrew her guilty plea.

On the eve of trial, the parties reached another plea agreement. This agreement, made pursuant to rule 11(c)(1)(C), proposed to bind the district court to a sentence at the bottom of the guidelines range so long as Garrott pleaded guilty to two of the ten counts. At a hearing, the district court rejected the agreement, reiterating its position that a binding plea agreement "would be seen as manipulating the court" and that it could not participate in the plea negotiations. When asked whether she was ready to proceed to trial, Garrott told the court that she did not "know what other option there [was] . . . other than . . . pleading guilty to all of the counts in the indictment." The court responded, "I mean, there's always a [rule

---

[3] In a plea agreement under rule 11(c)(1)(C), the government "agree[s] that a specific sentence or sentencing range is the appropriate disposition of the case." Such a recommendation binds the district court once it accepts the plea agreement. Fed. R. Crim. P. 11(c)(1)(C).

11(c)(1)(B) agreement].  I don't know—that's what most courts do is a (B).  I'm just saying."  "[W]hether she pleads to one or ten," the court continued, "isn't going to affect the sentence . . . is my point.  This is all about sentencing.  And sentencing is the court's prerogative, and I don't want to be manipulated into caps, bottoms, whatever, when I've told you once that this is a serious case."  The court concluded the hearing by informing Garrott that it "[could not] participate in [plea agreement] discussions" and that its rejection of the plea was not driven by the number of counts she pleaded to;  instead, "[it was] driven by what is a reasonable sentence."

On the first day of trial, Garrott notified the district court that the government offered her another plea agreement, which required her to plead guilty to two counts.  She told the district court that she had rejected this plea agreement.  The trial proceeded, and she was ultimately convicted of eight of the ten counts.

In its presentence investigation report, the probation office calculated Garrott's offense level at twenty-two, her criminal history score at nine, and her criminal history category at IV.  The probation office did not include a three-level reduction for accepting responsibility.  Based on her offense level and criminal history, Garrott's guidelines range was sixty-three to seventy-eight months' imprisonment.  The parties did not object to the presentence report.

At the sentence hearing, Garrott asked for a downward variance from her guidelines range because she had accepted responsibility for her conduct before trial.

She claimed that she had admitted to some wrongdoing when she pleaded guilty twice and that she withdrew those pleas only because the district court rejected the plea agreements.  The government opposed the downward variance because Garrott had violated her conditions of pretrial release, had an extensive criminal history, and received a large sum of money as a result of the scheme.  However, the government did acknowledge that Garrott accepted responsibility for her crimes at the sentence hearing and attempted to do so "in the past."

The district court denied the variance because Garrott violated the conditions of her pretrial release and did not accept responsibility by pleading guilty.  The district court sentenced Garrott to seventy-two months' imprisonment and ordered her to pay restitution in the amount of $56,897.  The district court noted that it would have imposed this same sentence even if it found that she had accepted responsibility.  The district court emphasized that "the problem . . . driving the size of [her] sentence" was her extensive criminal history.  Pointing to the § 3553(a) factors, the district court explained that (1) Garrott's conduct contributed to the rampant tax fraud that was going on in Montgomery at the time, (2) the crime and the amount of loss were serious, (3) the sentence was appropriate to deter "other people who might think that they could help cheat the government," and (4) it wanted to protect the public from any further crimes Garrott would commit.  Garrott

7

objected that the sentence was substantively unreasonable, but the district court overruled her objection.  This is her appeal.

## DISCUSSION

Garrott raises two issues on appeal:  First, she contends the district court improperly participated in her plea negotiations with the government.  Second, she argues her sentence was substantively unreasonable.

### *Plea Negotiations*

Garrott contends that her conviction should be vacated because the district court inappropriately participated in plea negotiations when it rejected her first plea agreement and stated that the thirty-six-month sentence the parties agreed to was unreasonable considering her criminal history.  She claims that by rejecting the agreement for this reason, the district court "implied that the parties needed to craft an agreement that would allow for a greater term of imprisonment."  She also argues that the district court participated in plea negotiations when it stated in its memorandum that a binding plea agreement under rule 11(c)(1)(A) or (C) "would most likely be viewed as a guess as to what the judge is thinking, or bait to catch the best deal" and when it told the parties at a hearing that they could enter into a non-binding agreement under rule 11(c)(1)(B).  Based on these statements, Garrott claims that the district court "effectively laid out what plea agreement it would find

8

acceptable, namely a plea under [r]ule 11(c)(1)(B) that would permit the court to sentence . . . Garrott to more than [thirty-six] months."

Because Garrott did not raise these objections below, we review for plain error. United States v. Castro, 736 F.3d 1308, 1313 (11th Cir. 2013). In doing so, we must examine the entire record. United States v. Harrell, 751 F.3d 1235, 1237 (11th Cir. 2014). To succeed under the plain-error rule, Garrott must show that "the district court commit[ted] an error that [was] plain, affect[ed] [her] substantial rights, and 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 1236 (quoting United States v. Vonn, 535 U.S. 55, 63 (2002)). An error is plain if "the error . . . is obvious and is clear under current law," United States v. Dortch, 696 F.3d 1104, 1112 (11th Cir. 2012), and an error is not obvious or clear when "'[n]o Supreme Court decision squarely supports' the defendant's argument, 'other circuits . . . are split' regarding the resolution of the defendant's argument, and 'we have never resolved the issue,'" id. (quoting United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999)).

Rule 11(c)(1) provides that "an attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement," but "[t]he court must not participate in these discussions." Rule 11(c)(1) "creates a 'bright line rule' that prohibits 'the participation of the judge in plea negotiations under any circumstances.'" Harrell, 751 F.3d at 1239 (quoting United States v. Johnson, 89

F.3d 778, 783 (11th Cir. 1996)). The rule serves two purposes: it acts as a "safeguard [to] the trial judge's actual neutrality" and "protect[s] [against] the appearance of impartiality." United States v. Tobin, 676 F.3d 1264, 1303–04 (11th Cir. 2012) (citing United States v. Adams, 634 F.2d 830, 840–41 (5th Cir. 1981)).

Here, there was no error. The district court was well within its authority to reject the plea agreement as unreasonable. See United States v. Bean, 564 F.2d 700, 703–04 (5th Cir. 1977) ("A decision that a plea bargain will result in the defendant's receiving too light a sentence under the circumstances of the case is a sound reason for a judge's refusing to accept the agreement.");[4] see also Fed. R. Crim. P. 11(c)(5)(A) (requiring a district court to inform the parties that it rejected a rule 11(c)(1)(A) or (C) plea agreement "on the record and in open court").

The record shows that the district court did not participate in the parties' plea negotiations. The district court denied Garrott's motion for a status conference, explaining that the "motion border[ed] on an invitation for the court to engage in plea negotiations, which of course it [could not] do." The district court stated that it was "express[ing] no view on either the weight or the nature of the evidence against Garrott or what sentence Garrott would receive if she were found guilty on some or all of the ten counts." At the hearing on the second plea agreement, the district court

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

said again that it "[could not] participate in [plea agreement] discussions."  The district court's statements here were unlike those we've held to be engaging in plea negotiations.  See, e.g., United States v. Diaz, 138 F.3d 1359, 1361 (11th Cir. 1998) (concluding that the district court participated in plea discussions when it listened to the government's summary of the evidence, told the defendant that the evidence against him was "compelling," and told the defendant that he needed "to think about [his] options" "because if this is a one-day or two-day trial, [he's] going to risk ten years in prison"); Adams, 634 F.2d at 836 (holding that the district court participated in plea discussions when it discussed the bargain with the parties in chambers and "offered a plea bargain to [the defendant] on [its] own initiative").

Even if the district court erred when it mentioned the non-binding plea under rule 11(c)(1)(B), the error was not plain.  We have never held, and Garrott doesn't cite to any case holding, that a district court violates rule 11(c)(1) when it rejects a plea agreement because it doesn't want to be bound to a specific sentence under rules 11(c)(1)(A) and 11(c)(1)(C).  We thus conclude that the district court did not plainly err when it rejected Garrott's plea agreements.

*Whether Garrott's Sentence Was Substantively Unreasonable*

Garrott next argues that her seventy-two month sentence was substantively unreasonable because the district court gave too much weight to her criminal history, erroneously found that she did not accept responsibility for her conduct, gave too

11

much weight to the seriousness of the loss amount, sought to deter Garrott from criminal conduct that she could no longer partake in, and imposed a sentence that was disproportionate to other defendants in similar circumstances.

The party challenging the sentence—here, Garrott—bears the burden of establishing that her sentence was substantively unreasonable. United States v. Sarras, 575 F.3d 1191, 1219 (11th Cir. 2009).   Specifically, we apply the deferential abuse-of-discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007).  We give "due deference" to the district court "because it has an institutional advantage in making sentencing determinations." United States v. Shabazz, 887 F.3d 1204, 1224 (11th Cir. 2018) (internal quotation marks omitted).   In evaluating the reasonableness of the sentence, we consider the totality of the circumstances. United States v. Alberts, 859 F.3d 979, 985 (11th Cir. 2017).

To determine an appropriate sentence, district courts must consider the § 3553(a) sentencing factors.  "A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it '(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors.'" United States v. Rosales-Bruno, 789 F.3d 1249, 1256 (11th Cir. 2015) (quoting United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc)).

12

Garrott's sentence was not substantively unreasonable. Seventy-two months' imprisonment is considerably lower than the statutory maximum of 288 months and within the guidelines range of sixty-three to seventy-eight months—both signs that the sentence was reasonable. See United States v. Stanley, 739 F.3d 633, 656 (11th Cir. 2014) ("[W]hen the district court imposes a sentence within the advisory [g]uidelines range, we ordinarily will expect that choice to be a reasonable one. A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence." (citation and internal quotation marks omitted)). The district court did not abuse its discretion when it weighed Garrott's criminal history and the loss she caused over other factors. "District courts have broad leeway in deciding how much weight to give to prior crimes the defendant has committed." Rosales-Bruno, 789 F.3d at 1261. Garrott's criminal history, which the district court emphasized was "the problem . . . driving the size of [her] sentence," included 87 crimes that were, like the ones in this case, based on theft and fraud. And the presentence investigation report showed that Garrott filed approximately one hundred false tax returns, which resulted in a $674,372 loss to the Treasury.

Garrott cites to two cases—United States v. Fox, 626 F. App'x 841 (11th Cir. 2015) (unpublished), and United States v. Angulo, 638 F. App'x 856 (11th Cir. 2016) (unpublished)—as evidence that her sentence was disproportionate compared to defendants "with similar records who have been found guilty of similar conduct."

These cases do not show disparate treatment because Garrott had a more severe, extensive, and long-standing criminal history, which, as the district court explained, made all the difference in this case.  See Fox, 626 F. App'x at 842 (criminal history category of II); Angulo, 638 F. App'x at 859 (criminal history category of I).  The sentencing record reflects that the district court reviewed the relevant § 3553(a) factors, did not give significant weight to an improper or irrelevant factor, and committed no clear error of judgment in its sentencing decision.

## CONCLUSION

For these reasons, we conclude that the district court did not plainly err in participating in Garrott's plea negotiations, and Garrott's sentence was not substantively unreasonable.

**AFFIRMED.**