UNITED STATES, Petitioner,

v.

Honorable Jim R. CARRIGAN, Respondent.

UNITED STATES, Plaintiff-Appellee,

v.

Daniel G. LANDRY, Defendant-Appellant.

UNITED STATES, Plaintiff-Appellant,

v.

OTIS ELEVATOR COMPANY and Daniel G. Landry, Defendants-Appellees.

Nos. 85–1530, 85–1536 and 85–1541.

United States Court of Appeals, Tenth Circuit.

Dec. 3, 1985.

Rehearings Denied Feb. 20, 1986.

Thomas O'Rourke, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on brief), Denver, Colo., for petitioner and plaintiff-appellant U.S.

James E. Nesland of Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., for defendant-appellant Daniel G. Landry.

Before McKAY, LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

The United States (the Government) and Daniel G. Landry appeal from an order of the district court rejecting what the court described as a proposed plea agreement between the Government and a corporate defendant, Otis Elevator Company ("Otis"), and what the Government characterizes as a motion to dismiss defendant Landry. The Government also seeks a writ of mandamus directing the district court to accept the proposed disposition of the case against Landry. The Government claims that the district court exceeded its authority when it rejected the agreement. We disagree and affirm.

### I.

On November 24, 1984 a federal grand jury in Colorado returned an indictment against Otis and Landry, an Otis employee. The indictment[1] charged Otis and Landry each with three counts of submitting false claims to the United States government in violation of 18 U.S.C. § 287 (1982).[2] On February 15, 1985 the Government and the two defendants submitted a proposed plea agreement to the district court. The agreement provided that Otis would plead guilty to all three counts and the Government would dismiss the three counts against Landry.[3] The plea agreement also incorpo-

---

**1.** The indictment alleged, in pertinent part of Count I, that:

"4. On or about March 30, 1980, in the State and District of Colorado and elsewhere, OTIS ELEVATOR COMPANY and DANIEL G. LANDRY made and caused to be made and presented and caused to be presented to the United States Department of Transportation and the Urban Mass Transit Administration a claim against DOT and UMTA for the payment of $168,270, knowing that said claim was false, fictitious and fraudulent, in that approximately $106,071.22 of that requested payment resulted from the improper charging of costs incurred on the Duke contract to Otis-TTD overhead accounts."

Rec., vol. I, at 2. Counts II and III made similar allegations that Otis and Landry overcharged the Government on the same contract by $450,-435.97 and $72,907.72 on two other dates. *Id.* at 2–3.

**2.** 18 U.S.C. § 287 provides for a maximum penalty of a $10,000 fine and five years' imprisonment for each violation.

**3.** Specifically, the agreement provided in pertinent part:

"The United States of America, by and through Assistant United States Attorney Thomas M. O'Rourke, defendant OTIS ELEVATOR COMPANY and its attorney, Brian C. Elmer, and defendant DANIEL G. LANDRY and his attorney, James E. Nesland, agree to the following pursuant to Rule 11(e) of the Federal Rules of Criminal Procedure:

"1. The defendant OTIS ELEVATOR COMPANY and the defendant DANIEL G. LANDRY acknowledge that they have been charged by indictment with three counts of violating Title 18, United States Code, Section 287.

"2. The defendant OTIS ELEVATOR COMPANY understands that by pleading guilty to the indictment it will face the following possible penalties: a fine of not more than $10,000 for each count.

" . . . .

"5. The defendant OTIS ELEVATOR COMPANY and the U.S. Department of Justice have agreed to settle all potential civil and contractual claims that the government might have against OTIS relating to this matter. This agreement is attached to and incorporated into this plea agreement.

"6. It is agreed that OTIS is entering into this agreement on the express condition that no debarment or suspension action is or will be taken by any government entity on the basis of the guilty pleas referenced in paragraph 2 of this Plea Agreement, any conviction based on the pleas, or its past conduct that was involved in the government's investigation. The defendant OTIS ELEVATOR COMPANY's settlement agreements with the U.S. Departments of Transportation and Defense are attached to and incorporated into this plea agreement.

"7. The government agrees to move to dismiss the indictment in this case as it relates to the defendant DANIEL G. LANDRY.

"8. It is agreed that other than as set forth in this Plea Agreement the U.S. Department of Justice will not prosecute OTIS ELEVATOR

rated three settlement agreements between Otis and the United States Departments of Justice, Defense, and Transportation. Copies of these agreements were attached to the plea bargain agreement. The proposed plea bargain agreement was signed by Assistant United States Attorney Thomas O'Rourke, Landry, Landry's attorney James Nesland, and Otis' attorney.

The agreement with the Justice Department provided for the settlement of a civil action based on the false claims that formed the basis of the indictment against Otis and Landry. In exchange for a release from a potential civil claim of $629,000, Otis agreed to pay $900,000 to the United States. The agreements with the Departments of Defense and Transportation bar Otis' Denver division from government contracts with the two agencies for three years, isolate Landry's immediate supervisor from government work, and bar Landry from ever working for Otis or its affiliates. The agreement with the Defense Department also requires Otis to implement specific measures designed to prevent future occurrences of the alleged fraudulent practices underlying the indictment. These measures included a "cost principles awareness program" for Otis' employees and use of independent accountants to review the accounting system of Otis' Denver division.

As part of the proposed plea bargain materials submitted on February 15, the Government included a motion to dismiss the charges against Landry, as required by the plea bargain.[4] The motion to dismiss was presented to the district court along with all of the plea bargain and settlement agreement documents.

On March 22, 1985 the district court held a hearing on the proposed plea agreement. Present at the hearing were Assistant United States Attorney O'Rourke, Landry, and

---

COMPANY, its present or former officers, directors or employees for any criminal violation of the United States Code for any conduct relating to the charging of costs or expenses by OTIS ELEVATOR COMPANY, which were involved in the government's investigation.

"9. The defendant OTIS ELEVATOR COMPANY agrees that no threats, promises, representations or agreements, other than those set out in this and the attached documents, have been made to induce it to plead guilty to the indictment.

"10. The defendants OTIS ELEVATOR COMPANY and DANIEL G. LANDRY, their attorneys, and the government acknowledge that the sentencing judge is not a party to this agreement, is not bound by it and is free to impose the maximum penalties as set out in paragraph 2, and that the judge may accept or reject this agreement or may defer his or her decision as to acceptance or rejection until there has been an opportunity to consider a pre-sentence report.

"11. It is agreed that if the Court refuses to accept any provision of this Plea Agreement no party is bound by any of the provisions of the Agreement."

Rec., vol. I, at 21–23.

4. The motion provides:

"The United States of America, by and through Assistant United States Attorney Thomas M. O'Rourke, moves this court for an order dismissing the indictment as it relates to defendant DANIEL G. LANDRY.

"As grounds for this motion, the government states the following:

"1. In exchange for a settlement of civil and administrative issues raised by the investigation that resulted in the indictment in this case, defendant OTIS ELEVATOR COMPANY has agreed to enter pleas of guilty to the three counts of the indictment.

"2. Defendant DANIEL G. LANDRY, who had been the administration manager of the company's Transportation Technology Division, has terminated his employment with OTIS ELEVATOR COMPANY.

"3. OTIS ELEVATOR COMPANY has agreed to take steps that, in the opinion of representatives of the United States Departments of Defense, Transportation and Justice, will insure that OTIS will operate at the level of business integrity required of a government contractor.

"4. OTIS ELEVATOR COMPANY also has agreed to make restitution to the United States in the amount of $900,000.00.

"5. In exchange for these commitments by OTIS ELEVATOR COMPANY, the Departments of Defense and Transportation have agreed not to suspend or debar OTIS ELEVATOR COMPANY as a government contractor and the United States has agreed to move to dismiss the indictment as it relates to defendant DANIEL G. LANDRY."

According to the Government, this motion was filed in open court with the district court on February 15, 1985, the same day the proposed plea bargain agreement was filed. *See* Motion to Supplement Record.

Nesland, who represented both Otis and Landry. The district court expressed concern that, under the terms of the proposed agreement, no individuals were to be prosecuted for the fraud against the Government, which totaled $629,000. The court stated:

"In my view, this proposed plea agreement reflects on the impartiality of the whole justice system. And I have trouble feeling that I can maintain the integrity of this court and yet go along with all aspects of this plea agreement.

"And the reason is that the United States is charging here, and apparently there is an agreement, at least by the corporation, that somebody defrauded the United States of $629,000 through contract fraud. As I read this proposal, every individual concerned—connected with this fraud will walk free without any prosecution. It's familiar law to all of us, of course, that a corporation can only act through its agent or its employees, officers or directors. And what concerns me is what message we are sending to the public and to the taxpayers....

"[I]f somebody really did steal $629,-000 of government money through fraud, as charged, it's a mockery to me to come in here and ask that I accept a plea agreement that accepts the minimum of a $30,000 fine for that dimension of an offense.

"So I'm troubled by some unanswered questions here. Was any kind of an arrangement made between the corporation and Landry? There is nothing that speaks to that question at all. Did Mr. Landry get retirement and severance pay to walk away from this? Did he get any kind of punishment? The prosecutor's statement says that he's the one that's responsible.

"If he isn't, then he should—the case against him should be dismissed. But somebody ought to say that. It seems inconsistent to me to say in the prosecutor's statement that he's the one that did it and then say we are not going to prosecute him when there is this much involved. What do people in the public think?

"....

"So my questions are for you. I think we have got to settle them before I am going to accept this plea agreement or any other plea agreement in this case.

"....

"So it's my order that the plea agreement tendered in its present form is rejected under Rule 11(e). The case is set for trial April 23, 1985. The parties are accorded one week to confer and to see if they can work out a plea agreement that is acceptable to the Court. But I'm not engaging in any plea bargaining, never have and never will, but I think you are entitled to some guidance.

"It seems to me minimally a fair plea agreement ought to involve some accountability of some guilty individual, not just a corporation, number one, some form of accountability. Number two, there ought to be some accountability to the people that own this corporation. Somebody ought to have an obligation to make some report to the stockholders saying what was done here and who did it. It seems to me that's a fundamental responsibility that's involved as far as the people that really own this corporation.

"... If you think you have got something worked out, I'll be available to confer, as long as both sides, all parties, are represented by counsel, and to let you know whether what you have worked out would be acceptable.

"But in its present form the plea agreement is rejected."

Rec., vol. IV, at 5–8.

Attempting to respond to the court's ruling, O'Rourke offered several reasons for the proposed plea agreement. He argued that the Government had already received $900,000 from Otis in the civil settlement, which O'Rourke termed "ample restitution." *Id.* at 9. He also noted that a trial of Otis would result in "a battle of experts on accounting issues." *Id.* Finally, he ar-

gued that the Government had achieved a significant public interest objective by obtaining a corporate guilty plea to criminal charges of fraud from a corporation. Although O'Rourke admitted "that Mr. Landry acted as the corporation," he defended the dismissal of charges against Landry as a necessary "tradeoff." *Id.* To this the court responded:

> "If you say it's a tradeoff, that may well be, but the problem I am having is the gross disproportion between the $629,000 the government says was taken from the government, and the $30,000 maximum fine for the three charges to which the corporation is going to plead guilty."

*Id.* at 10. The court refused to reconsider its ruling and reiterated that "the plea agreement, in its present form, is rejected." *Id.* at 13. At no time during the March 25 hearing did either defendant tender a guilty plea.

On March 27, the parties appeared before the district court for another hearing on the proposed plea agreement. At this hearing the Government and Landry urged the district court to reconsider its March 25 ruling and argued that the proposed dismissal of the charges against Landry constituted a motion to dismiss under Rule 48(a) of the Federal Rules of Criminal Procedure.[5] The district court was troubled by this tactic and expressed its concern with "whether [the Government] can change the authority of the Court to accept a plea agreement or reject a plea agreement under Rule 11(e) by merely invoking Rule 48(a)." Rec., vol. V, at 4. The following exchange then occurred between the court and Landry's attorney Nesland:

> "THE COURT: Well, is the—is the Otis plea contingent on the treatment you seek being given to Mr. Landry, is that what we are talking about?

---

**5.** Rule 48(a) provides in pertinent part: "[T]he United States attorney may by leave of court file a dismissal of an indictment ... and the prosecution shall thereupon terminate."

**6.** The reasons included the difficulty of proving the case against Otis and Landry at trial, the

> "MR. NESLAND: It's part of that plea bargain, yes, it is, Your Honor.
>
> "THE COURT: It's a question of whether I accept or reject the plea bargain package, isn't it?
>
> "MR. NESLAND: Pardon?
>
> "THE COURT: Then the question to me is whether I accept or reject the plea bargain package?
>
> "MR. NESLAND: But, Your Honor, you have already pointed out that the only aspect of the plea bargain that you find difficulty with is the aspect which contemplates a dismissal of the charges at—
>
> "THE COURT: And you say it's all in one package?
>
> "MR. NESLAND: That's correct, it is in one package. And ... [the] question of whether or not you accept or reject *that aspect of the plea bargain* is governed by Rule 48 and the Court's discretion under that particular rule...."

*Id.* at 20–21 (emphasis added). The Court rejected this argument:

> "THE COURT: .... And I think that what we have here, in substance, is a plea bargain under Rule 11(e), and I so find and conclude. That's the basis of my decision.
>
> "I'm rejecting the plea bargain, it's all one package....
>
> "....
>
> "MR. NESLAND: One clarification.
>
> "Is the Court denying its leave for the prosecution to file a motion to dismiss?
>
> "THE COURT: Well, as long as it's on these same terms, yes."

*Id.* at 23–24.

Arguing on behalf of the Government, O'Rourke once again attempted to explain to the court the reasons for structuring the plea agreement to include a dismissal of the charges against Landry.[6] The court refused to alter its decision.

---

$900,000 civil settlement, the imposition of internal restructuring within Otis, judicial economy, and the public impact of the Government's obtaining a guilty plea from a corporate defendant.

"THE COURT: *Well, as I read the Rule 11(e), it clearly authorizes me to reject the plea agreement as it now stands. I do reject it under Rule 11(e).* If the prosecution changes the prosecutor's statement to assert facts consistent with this Count dismissing the charges against Mr. Landry, then I will consider at that time whether to grant leave of Court *under Rule 48(a)* to move to dismiss those charges. *No such motion really is before me except as part of a plea agreement.* Now, that plea agreement is inconsistent with the public interest, in my view, and this Court's integrity, as well, and it's inconsistent, in my view, to the principle of equal administration of justice.

"....

"MR. O'ROURKE: Could I ask one question?

"THE COURT: Yes, sir.

"MR. O'ROURKE: If the parties rewrote the plea agreement to exclude Mr. Landry, and submit it—that to the Court independently, and then we submitted a motion to dismiss the indictment against Mr. Landry, outside the scope of the plea agreement, based on Rule 48(a), giving all the reasons we have given already, would that put the Court in a different posture? I wonder if I—

"THE COURT: I can't engage in or participate in plea bargaining, as you know.

"MR. O'ROURKE: I understand, Your Honor.

"I guess I'm wondering if that would—

"THE COURT: I can't rule in advance. I would have to see what it is.

"As you understand, I think, there are many alternatives open to both sides in this case, and I don't think they have all been explored. *And I certainly haven't acted on anything but the plea agreement that's been submitted to me,* in the terms in which it's submitted and based on the prosecutor's statement I have read.

"MR. O'ROURKE: I believe, though, that in response to Mr. Nesland's question, the Court has denied the motion to dismiss.

"THE COURT: Yes, *as part of this plea agreement.*"

*Id.* at 32–34 (emphasis added).

The Government appeals the court's order refusing to accept the plea bargain, which the Government characterizes as an order denying a motion to dismiss the indictment against Landry. Because there is a threshold issue of whether the court's order is appealable, the Government also seeks a writ of mandamus directing the court to grant a motion to dismiss the charges against Landry and to accept the proposed plea bargain agreement. The crucial issue in this case is whether the district court's refusal to accept the plea agreement is controlled by Rule 11(e) or Rule 48(a) of the Federal Rules of Criminal Procedure. The answer to this question determines both the appealability issue and the extent of the district court's discretion to refuse to accept the proposed plea bargain. We therefore decide it first.

### II.

The Government argues that the district court in effect issued two orders, one rejecting the proposed plea agreement under Rule 11(e) and one denying the Rule 48(a) motion to dismiss an indictment. We are not persuaded.

Our review of the record, particularly the transcripts of the March 22 and 27 hearings, reveals that the district court was acutely aware of the distinctions between, and the different ramifications of, Rule 11(e) and Rule 48(a). On numerous occasions the court expressly refused to permit the dismissal of charges against Landry as part of the proposed plea bargain. *See* rec., vol. IV, at 7, 8, 13; *id.,* vol. V, at 10, 23, 24, 28, 34. The court also repeatedly grounded its ruling and its authority on Rule 11(e). *See* rec., vol. IV, at 7; *id.,* vol. V, at 4, 10, 12, 23, 32.

The record clearly indicates that Otis' plea of guilty was contingent upon a num-

ber of factors, one of which was the dismissal of charges against Landry. As noted above, Landry's attorney admitted to the court that Otis' plea and the dismissal of charges against Landry were "one package." Rec., vol. V, at 20. The plea agreement itself expressly provides that dismissal of charges against Landry was a necessary prerequisite to Otis' plea of guilty. *See* rec., vol. I, at 22. During oral argument on this appeal, the Government conceded that Otis would not plead guilty unless the charges against Landry were dismissed.

The plea agreement presented to the court provides that the parties "agree ... pursuant to Rule 11(e) of the Federal Rules of Criminal Procedure." *Id.* at 21. The agreement expressly acknowledges that the district court was not bound by the agreement and was free to accept or reject it, and "that if the Court refuses to accept *any provision* of this Plea Agreement no party is bound by any of the provisions of the Agreement." Rec., vol. I, at 23 (emphasis added). At the March 27 hearing, after the Government had shifted its focus to the dismissal of charges against Landry, O'Rourke nonetheless argued to the court that the Government had "structured an equitable plea agreement here," *id.*, vol. V, at 6, and emphasized that "[i]f we were letting somebody get away, we wouldn't be involved in [a] plea bargain," *id.* at 30–31.

The Government's motion to dismiss was submitted as part of the proposed plea agreement, *see supra* note 4, and ties together Otis' plea and the dismissal by expressly providing that Otis agreed to enter guilty pleas in exchange for, *inter alia,* the dismissal of the indictment against Landry. *Id.* The motion to dismiss was not styled as a Rule 48(a) motion, nor was it presented to the district court on March 25 as a separate Rule 48(a) motion. The Government made no effort to amend the motion prior to the March 27 hearing, and the motion to dismiss remained intertwined

with the proposed plea bargain agreement, which was subject to Rule 11. The fact that Landry and his attorney signed the proposed plea agreement also indicates that the agreement and motion to dismiss were inextricably linked. The motion to dismiss cannot therefore be characterized as a separate and unilateral dismissal by the prosecutor.

The district court clearly recognized the differences between Rule 11(e) and Rule 48(a), and offered the Government the option of submitting both a plea agreement with Otis alone and a separate Rule 48(a) motion dealing only with Landry. The Government seemingly acknowledged that it had not yet submitted a separate Rule 48(a) motion when O'Rourke addressed the court near the end of the March 27 hearing. *See* rec., vol. V, at 33, quoted *supra* at 1459–1460. The Government chose not to submit separately a proposed plea agreement and a Rule 48(a) motion to dismiss in order to permit the court to deal with the two defendants individually.[7] The inescapable conclusion to be drawn from the record is that Otis' plea and the dismissal of charges against Landry were presented as part of a single proposed agreement which the court treated accordingly.

The district court's actions were consistent with the law governing proposed plea bargains. Under Rule 11(e)(2), "the court may accept or reject the agreement." The Notes of the Advisory Committee on Rules indicate that acceptance of a plea is a decision for the district judge: "The plea agreement procedure does not attempt to define criteria for the acceptance or rejection of a plea agreement. Such a decision is left to the discretion of the individual trial judge." Fed.R.Crim.P. 11(e), advisory committee note. *See* C. Wright, Federal Practice & Procedure § 175.1 at 637 (2d ed. 1982). Courts considering refusals to accept plea bargains have held that a judge has broad discretion in accepting or rejecting them. *See, e.g., United States v.*

---

7. Despite Landry's assertion to the contrary, the record does not reveal that the district court ever ruled on any separate Rule 48(a) motion.

*Moore,* 637 F.2d 1194, 1196 (8th Cir.1981); *United States v. Adams,* 634 F.2d 830, 835 (5th Cir.1981); *In re Yielding,* 599 F.2d 251, 251–52 (8th Cir.1979); *United States v. Stamey,* 569 F.2d 805, 806 (4th Cir.1978); *United States v. Bean,* 564 F.2d 700, 703 (5th Cir.1977). There is no absolute right to have a guilty plea accepted, and a court may reject a plea in the exercise of sound judicial discretion. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). While "[t]he procedures of Rule 11 are largely for the protection of criminal defendants . . . Rule 11 also contemplates the rejection of a negotiated plea when the district court believes that bargain is too lenient, or otherwise not in the public interest." *United States v. Miller,* 722 F.2d 562, 563 (9th Cir.1983); *see also Bean,* 564 F.2d at 704.

Rule 11(e) contemplates different types of plea bargains: charge bargains, predicated on the dismissal of other charges; and sentence bargains, predicated either upon the recommendation of or agreement not to oppose a particular sentence, or upon a guarantee of a particular sentence. *See, e.g., Miller,* 722 F.2d at 563. The proposed plea bargain in this case is neither a pure charge bargain nor a pure sentence bargain. It is a charge bargain in that it contemplates dismissal of charges in return for a guilty plea to other charges. Unlike the typical charge bargain, the defendant entering the guilty plea, Otis, is not the same as the defendant against whom the other charges are to be dropped. This difference is not significant. Rule 11(e)(1)(A), which covers charge bargains, is not restricted to the dismissal of charges against only a pleading defendant. Charge bargains are simply described as a guilty plea in exchange for the dismissal of "other charges." Fed.R.Crim.P. 11(e)(1)(A). Moreover, Landry, as an employee and agent of Otis, was acting for and on behalf of Otis, a fact which the Government consistently conceded before the district court.[8] We are aware of no authority for excluding this kind of legal relationship from the purview of Rule 11(e)(1)(A), nor does the Government argue that Rule 11 cannot apply to this kind of relationship. Indeed, its submission of the agreement as a proposed plea bargain indicates that it considered Rule 11 to be applicable. *See supra* note 3.

 In an important respect the proposed plea agreement is also a sentence bargain. The plea bargain limits the sentencing power of the district court because its effect is to eliminate any imposition of the penalty of imprisonment for the alleged violations of 18 U.S.C. § 287. *See supra* note 2. The district court recognized this limitation on its ability to impose a prison sentence when it noted that it was limited to imposing a fine of $30,000 without any "accountability of any person in the corporation that's responsible for the action." Rec., vol. IV, at 13. The court also stated that, "if somebody really did steal $629,000 of government money through fraud, as charged, it's a mockery to me to come in here and ask that I accept a plea agreement that accepts the maximum of a $30,-000 fine for that dimension of an offense." Rec., vol. IV, at 6. As part charge bargain and part sentence bargain, the proposed agreement is within the scope of Rule 11(e) and is therefore subject to the court's discretionary power to reject plea bargains.

The Government argues, nevertheless, that the district court's discretion in this case is more limited than it is under Rule 11(e) because the court's refusal to accept the plea bargain infringed upon the prosecutor's authority to dismiss indictments under Rule 48(a). The Government concedes that a prosecutor's power to dismiss a pending indictment is not absolute, but ar-

---

**8.** In the March 27 hearing, Assistant United States Attorney O'Rourke stated, "We assert that our decision is that [Landry] was acting as the corporation. It's a corporate crime. We have the corporation willing to plead guilty as charged." Rec., vol. V, at 9. *See also id.,* vol. IV, at 9. For the purposes of applying Rule 11(e), we therefore see no significant difference between this situation and the more typical case where some charges against a defendant are dropped in exchange for that defendant's pleading guilty to other charges.

gues that a district court's discretion to refuse to grant such a dismissal is limited.

 Rule 48(a) is primarily intended to protect a defendant from prosecutorial harassment, *Rinaldi v. United States*, 434 U.S. 22, 31, 98 S.Ct. 81, 86, 54 L.Ed.2d 207 (1977) (per curiam), but it also permits courts faced with dismissal motions to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts. *See United States v. Hamm*, 659 F.2d 624, 628–29 (5th Cir.1981); *United States v. Cowan*, 524 F.2d 504, 512–13 (5th Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976); *cf. United States v. Derr*, 726 F.2d 617, 619 (10th Cir.1984). A court is generally required to grant a prosecutor's Rule 48(a) motion to dismiss unless dismissal is "clearly contrary to manifest public interest." *Cowan*, 524 F.2d at 513; *see also Miller*, 722 F.2d at 566; *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir.1983); *Hamm*, 659 F.2d at 628. While we agree that a court's discretion is more limited under Rule 48(a) than it is under Rule 11(e), we disagree with the Government's conclusion that Rule 48(a) controls this case.

In *United States v. Bean*, 564 F.2d 700, the Fifth Circuit considered the propriety of a district court's refusal to accept a plea bargain in which the defendant was to plead guilty to a theft charge in return for the prosecutor's motion to dismiss the more serious charge of burglary. The court in *Bean* recognized that the refusal to permit dismissal of the second count infringed on the prosecutor's authority to dismiss indictments. *See id.* at 704. The court concluded, however, that

"since the counts dismissed pursuant to plea bargains often carry heavier penalties than the counts for which a guilty plea is entered, a plea bargain to dismiss charges is an indirect effort to limit the sentencing power of the judge.... *Because the judge's discretion over the duration of imprisonment is being limited, the standard for review of refusal of plea bargains should be closer to the standards for review of sentencing than for review of a dismissal which does not involve a plea bargain under Rule 48(a)."*

*Id.* (emphasis added). The court in *Bean* reasoned that, "[a]lthough the plea bargain was cast in the form of a dismissal of [a] count," *id.*, the effect was to limit the sentence available and "the district judge properly exercised reasonable discretion in rejecting the plea bargain in order to impose an appropriate sentence," *id.* In decisions following *Bean*, the Fifth Circuit has continued to apply the Rule 11(e) standards to a court's refusal to accept a plea bargain agreement which includes the dismissal of other charges. *See Adams*, 634 F.2d 835; *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981).[9] Other courts have reached the same conclu-

---

**9.** The Government relies on two Fifth Circuit decisions in arguing to the contrary that Rule 48(a) governs a district court's refusal to accept a plea bargain. *See United States v. Hamm*, 659 F.2d 624 (5th Cir.1981); *United States v. Cowan*, 524 F.2d 504 (5th Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). Neither case is controlling on this issue.

In *Cowan*, a defendant pled guilty to a charge in Washington, D.C., in return for an agreement that pending charges in Texas would be dismissed. The plea was accepted in the first court but the second court refused to grant the Government's separate Rule 48(a) motion in Texas. The second court's refusal was not based on Rule 11(e), and the Fifth Circuit, in reversing the Texas court's order, did not address the relationship between Rules 11(e) and 48(a). Moreover, the dismissal of the charges in Texas could not and did not infringe on the first court's sentencing power. *Cowan* was also decided before the Fifth Circuit held in *Bean* that Rule 11(e) governs a district court's discretion to reject plea bargains which contain a dismissal of other charges also before that court.

In *Hamm*, the Fifth Circuit reversed a district court's refusal to permit a Rule 48(a) dismissal. The Government was attempting to dismiss all of the charges against all of the defendants, and thus no pleas to any remaining counts remained to implicate the district court's Rule 11 sentencing authority. *Hamm* therefore involved a pure Rule 48(a) dismissal, unlike the charge bargain analyzed in *Bean*. The Fifth Circuit in *Hamm* did not address *Bean* and nothing indicates any cutback on the court's earlier holding in *that case.*

sion. *See Moore*, 637 F.2d at 1196; *Stamey*, 569 F.2d at 806; *cf. United States v. Escobar Noble*, 653 F.2d 34, 36–37 (1st Cir.1981).

■ The reasoning and holding of *Bean* apply to the case before us. The ultimate effect of the dismissal of charges against Landry under the plea bargain was to restrict the district court's ability to impose what it considered an appropriate sentence, namely, criminal imprisonment under 18 U.S.C. § 287 for fraud against the government. We therefore agree with the court in *Bean* that the district court's discretion and our standard of review are governed by Rule 11(e) and not by Rule 48(a).[10] *See Bean*, 564 F.2d at 704.

### III.

We must next decide whether 28 U.S.C. § 1291 permits an appeal of a district court's pretrial order rejecting a proposed plea bargain agreement.[11] The Government argues that the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), permits such an appeal. In *Cohen* the Supreme Court recognized that a district court order that does not terminate a case nevertheless may be appealable if the decision falls "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225. The Court emphasized that section 1291 is to be given a "practical rather than a technical construction." [12] *Id.*

The Supreme Court recently clarified the requirements for appealability under this doctrine: "We have ... defined this limited class of final 'collateral orders' in these terms: '[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)).

In *Parr v. United States*, 351 U.S. 513, 516–19, 76 S.Ct. 912, 914–16, 100 L.Ed. 1377 (1956), decided after *Cohen*, the Supreme Court held that the denial of a defendant's pretrial motion to dismiss an indictment is not a final order under section 1291 and that the collateral order doctrine does not apply. The Court reasoned that a defendant can challenge the propriety of such a denial on an appeal from a judgment of conviction, and that permitting an interlocutory appeal would defeat the policy

---

**10.** The Government relies on the Ninth Circuit's decision in *United States v. Miller*, 722 F.2d 562 (9th Cir.1983), in support of its argument that the standard governing Rule 48(a) dismissals applies in a case where a plea bargain contains dismissal of charges as one of its terms. We are not persuaded. First, the court in *Miller* was faced with deciding only whether "by categorically rejecting all one-count pleas to multiple count indictments, the district court has abdicated its duty [under Rule 11] to exercise discretion by considering every case individually." *See* 722 F.2d at 563. In holding that such categorical rules are impermissible, *id.* at 565, the court expressly noted that it was not deciding the proper judicial role in sentence bargains or the extent of judicial discretion over individual charge bargains, *id.* at 564. The court reiterated that "although courts are free to accept or reject individual charge bargains, they should avoid creating broad [categorical] rules that limit tra-

ditional prosecutorial independence." *Id.* at 565. The court in *Miller* did not hold that Rule 48(a) limits judicial discretion in considering charge bargains but rather that "courts must review individually every charge bargain placed before them." *Id.* at 566.

**11.** 28 U.S.C. § 1291 provides: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court."

**12.** The collateral order doctrine applies to both civil and criminal proceedings. *Abney v. United States*, 431 U.S. 651, 659 n. 4, 97 S.Ct. 2034, 2040 n. 4, 52 L.Ed.2d 651 (1977); *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 1 (1951); *United States v. Cheama*, 730 F.2d 1383, 1385 (10th Cir.1984).

against piecemeal review in criminal cases which underlies the finality requirement of section 1291. *Id.* at 519, 76 S.Ct. at 916. Although the Court has since held that a defendant may appeal the denial of a pretrial motion to dismiss based on double jeopardy grounds, *see Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977), the Court has refused to extend the right to appeal to denials of defendants' motions to dismiss on other grounds. *See United States v. MacDonald,* 435 U.S. 850, 856–61, 98 S.Ct. 1547, 1550–53, 56 L.Ed.2d 18 (1978) (order denying motion to dismiss on speedy trial grounds not appealable).

■ The reasoning of *MacDonald* compels the conclusion that a district court order rejecting a proposed plea bargain is not appealable by the defendant until after he has been convicted and sentenced. Rejection of a plea bargain obviously is not final in the sense of terminating the criminal proceedings in the trial court. *See id.* at 857, 98 S.Ct. at 1550. It does not represent "a complete, formal, and, in the trial court, final rejection" of the defendant's claim. *Abney,* 431 U.S. at 659, 97 S.Ct. at 2040. Thus, the prosecutor and defendant may renegotiate an agreement that the district court will accept, or the defendant's claim may be satisfied by a subsequent acquittal if no plea agreement is reached. In addition, rejection of a plea agreement is not "collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i.e.,* whether or not the accused is guilty of the offense charged." *Id.* Instead, a court's decision to accept or reject a plea of guilty and to impose a particular sentence on a defendant is directly dependent on the court's assessment of the defendant's degree of culpability and the extent of punishment appropriate to such culpability. Finally, a defendant has no right to have a plea bargain accepted.

*Santobello,* 404 U.S. at 262, 92 S.Ct. at 498; *Lynch v. Overholser,* 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962). The rejection of a plea bargain therefore does not involve "an important right which would be 'lost, probably irreparably,' if review had to await final judgment." *Abney,* 431 U.S. at 658, 97 S.Ct. at 2039 (quoting *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225); *see also MacDonald,* 435 U.S. at 860 & n. 7, 98 S.Ct. at 1552 & n. 7.[13]

Similar reasons militate against granting the Government the right to appeal orders rejecting plea bargains under Rule 11(e). The Government, however, offers several arguments in support of a right to appeal which it claims distinguish the analysis from that applied to a criminal defendant.

First, the Government claims that an order refusing to permit it to dismiss charges implicates the constitutionally sensitive issue of separation of powers, which is violated by a district court's unwarranted interference in the exercise of executive discretion. *See Hamm,* 659 F.2d at 628–29; *Cowan,* 524 F.2d at 507–09. The Government's argument is premised on the assumption that the district court's order was a denial of a separate, unconditional Rule 48(a) motion. We have already rejected this characterization. An order denying a comprehensive plea bargain under Rule 11(e) does not present the same constitutional difficulties as one denying only a Rule 48(a) motion. *See Bean,* 564 F.2d at 704. The right at issue here is the Government's right to have a plea bargain accepted. We are aware of no authority granting the Government such a right.

Second, the Government claims that, when a court denies a Rule 48(a) motion, a defendant's subsequent acquittal would preclude an appeal by the Government, *see United States v. Scott,* 437 U.S. 82, 88, 98 S.Ct. 2187, 2192, 57 L.Ed.2d 65 (1978), while a conviction would place the Government in

---

**13.** Ordinarily, appeals from rejection of plea bargains are taken after a subsequent trial and conviction. *See, e.g., In re Arvedon,* 523 F.2d 914, 916 (1st Cir.1975) (citing *United States v. Bednarski,* 445 F.2d 364 (1st Cir.1971); *see also United States v. Delegal,* 678 F.2d 47, 50 (7th Cir.1982); *United States v. Moore,* 637 F.2d 1194, 1195 (8th Cir.1981); *United States v. Adams,* 634 F.2d 830, 831 (5th Cir.1981); *United States v. Ocanas,* 628 F.2d 353, 356 (5th Cir. 1981), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981).

the unrealistic position of joining a defendant on appeal in arguing that no trial should have been held, *see United States v. Dupris*, 664 F.2d 169, 173 n. 6 (8th Cir. 1981). Therefore, unlike a defendant, the Government could lose its right to effective review on appeal. *See Abney*, 431 U.S. at 658, 97 S.Ct. at 2039. Again, this argument applies only to a separate Rule 48(a) motion. An order denying a proposed plea bargain does not conclusively force the Government to trial. The Government could renegotiate the plea agreement until accepted by the court, or it could move to dismiss all the charges against the parties to the agreement in an unconditional Rule 48(a) motion. If its Rule 48(a) motion is then denied, an appeal might lie.[14] Moreover, the Government could also exercise the option of simply declining to prosecute further, *see Dupris*, 664 F.2d at 172 n. 4; *Cowan*, 524 F.2d at 511, if it wished to avoid a criminal conviction in a particular case.

Allowing the Government to appeal the rejection of a plea agreement would frustrate the policy against piecemeal disposition of criminal proceedings. An appeal could also be used as leverage against a district court with whose sentencing decisions the Government disagrees. If successful, an appeal would result in a premature and unwarranted intrusion upon a district court's broad discretion to assess pleas and impose sentences. The court's decision is not final until a defendant has been convicted and sentenced. Any review of a district court's plea decision before that time would in effect be an indefensible advisory opinion and an unjustified encroachment upon a trial court's authority. A right to appeal would also create potentially undesirable consequences between prosecutors and courts caused by disagreements over plea proposals. Accordingly, we hold that neither a defendant nor the Government may appeal a preconviction order of the district court denying a proposed plea bargain agreement under Rule 11.[15]

## IV.

The final question is whether a writ of mandamus should issue. The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 189, 66 L.Ed.2d 193 (1980) (per curiam); *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). The Supreme Court has recognized that the writ of mandamus

"has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so....' Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy."

449 U.S. at 35, 101 S.Ct. at 190 (quoting *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). A party seeking issuance of the writ must have no other adequate means to attain the desired relief and must show that his right to the writ is clear and indisputable. *See id.*

■ The district court's rejection of the proposed plea bargain does not justify the

---

14. Because we conclude that the order from which the Government appeals is not simply a refusal of a prosecutor's Rule 48(a) motion to dismiss, we need not decide whether the Government, as opposed to a defendant, may appeal such a denial under § 1291. We note that the only court to decide this particular issue has held that the Government may appeal a Rule 48(a) denial. *See United States v. Dupris*, 664 F.2d, 169, 172 (8th Cir.1981). The court in *Dupris* based its decision on the "unusual circumstances" before it in that case. *Id.* at 170, 172.

15. Our conclusion is also consistent with the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 213, 98 Stat. 1976, 2011 (to be codified at 18 U.S.C. § 3742) (effective Nov. 1, 1986). Section 213 permits a defendant to appeal a sentence greater than one specified in a plea agreement under Rule 11(e), and also permits the Government to appeal a sentence less than one specified in such an agreement. However, a defendant and the Government can seek appellate review only of "an otherwise final sentence." *Id.*

issuance of a writ. A defendant or the Government may seek review of such an order on direct appeal after a final judgment of conviction and sentencing. Therefore it cannot be said that the parties have no adequate means to seek the desired relief. *See id.* 449 U.S. at 36, 101 S.Ct. at 190. Moreover, the authority to accept or reject a plea bargain agreement under Rule 11(e) is confined almost entirely to the trial court's discretion. A district court is under no duty to consider a plea agreement or to accept or reject it. *See, e.g., Moore,* 637 F.2d at 1196. "Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Daiflon,* 449 U.S. at 36, 101 S.Ct. at 190 (quoting *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 666, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978) (plurality opinion)). The Government's petition for a writ of mandamus is therefore denied.

## V.

In Nos. 85–1536 and 85–1541, the appeals of the Government and Landry are dismissed as interlocutory. In No. 85–1530, the Government's petition for writ of mandamus is denied.