UNITED STATES of America

v.

Dave HUSBAND.

No. B–89–00100–CR(1).

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 13, 1989.

L. Stuart Platt and John M. Bales, Asst. U.S. Attys., Beaumont, Tex., for plaintiff.

Joseph C. Lum Hawthorn, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

In this criminal proceeding, this court set a hearing for September 14, 1989, to hear proposed pleas of guilty for Dave Husband and Buck Husband, both of whom had signed plea agreements with the United States. According to the terms of the agreement, these two defendants were to plead guilty to certain counts of the indictment, with an agreed "cap" upon both their total exposure to imprisonment and their exposure to imprisonment for each count. A third defendant, David Neil Husband, was to plead "true" to several forfeitures alleged in the same indictment.

During the course of the hearing, a question arose as to whether the exposure negotiated in Dave Husband's plea agreement could be imposed under the Federal Sentencing Guidelines.[1] The court recessed the hearing so that a representative from the United States Probation Office could calculate the correct applicable sentence under the Guidelines. After hearing the calculations of the probation officer, it was the conclusion of this court the actual sentence which could be imposed under the plea agreement consistent with the Guidelines was substantially less than the plea agreement indicated upon its face. The plea agreement stated a negotiated maximum sentence of one hundred and forty-four months. This was the "cap" agreed to by the United States Attorney's office and the defendant Dave Husband. Under the Guidelines, however, if the plea agreement as written was accepted by this court,

---

1. The Federal Sentencing Guidelines are promulgated by the United States Sentencing Commission, which was created by enactment of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., and 28 U.S.C. § 991 et seq. The Guidelines, which are binding upon federal judges, set a range of sentence for any federal offense, calculated by combining the prescribed "offense level" with the defendant's criminal history.

there was a strong possibility the maximum sentence this court could impose would be sixty months.[2]

Based upon this discrepancy between the maximum Guidelines sentence which could be imposed and the maximum exposure to imprisonment which had been negotiated, this court exercised its discretion and rejected Dave Husband's plea of guilty. Because the pleas of guilty and true (as to forfeiture) of the other two defendants involved were closely connected with that of the defendant Dave Husband, the court rejected those pleas as well. The defendants Dave Husband and Buck Husband then moved that this court recuse itself from further involvement in this case.

## THE DEFENDANTS' MOTION

First, the court notes that while the defendants' motion is styled "Motion to Recuse", it apparently encompasses two motions, one for specific performance of the plea agreement, and the other for recusal. The defendants mention at paragraph XII of the Motion to Recuse that they intend to file a motion for specific performance, and in detail proceed to recite the case law and facts they allege would support such a motion. For the sake of clarity, this court renders an opinion both on the question of specific performance and on the motion for recusal.

## SPECIFIC PERFORMANCE OF THE PLEA AGREEMENT

■ The defendants argue that this court should be estopped from refusing to accept the plea agreement because "the defendants' only viable defense was plea bargaining and because their most valuable bargaining chip has been lost as a direct result of the Court's [sic] statements to the defendants' counsel that he would accept the negotiated plea bargain agreement...." Motion to Recuse, para. XII. In support of this argument, the defendants cite *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

*Santobello* is clearly distinguishable from the instant case. In *Santobello*, the petitioner was charged with two felony counts involving gambling. *Id.* at 258, 92 S.Ct. at 497. After negotiation with an assistant district attorney for the State of New York, the petitioner agreed to plead guilty to one count, a lesser-included offense that carried a maximum sentence of one year. In exchange for the plea, the assistant district attorney agreed to make no recommendation as to the sentence to actually be imposed. *Id.*

At the sentencing hearing, a second district attorney appeared for the State of New York, and recommended the maximum one year sentence. *Id.* at 259, 92 S.Ct. at 497. The defense attorney object-

---

**2.** It is essential at this point to review how the probation officer explained the Guidelines would apply to this case. The defendant had agreed to plead guilty to Counts 6, 12, and 14 of the indictment in Cause No. B–89–100–CR, and to Count 1 of the indictment in Cause No. B–89–122–CR. This meant Dave Husband would plead guilty to one count of possession with intent to distribute in excess of 500 grams of cocaine, one count of possession of an unregistered firearm, one count of income tax evasion, and one count of illegal transportation of an alien. His plea agreement as negotiated provided for a maximum sentence of one hundred and forty-four months, but also provided for a maximum sentence on the possession of cocaine count of sixty months.

When a sentence must be calculated for multiple unrelated offenses, such as those found here, Guideline 3D1.4 applies. 3D1.4 provides that if the Guidelines offense level for the most serious offense (in this case the cocaine charge) is nine or more points higher than the Guidelines offense levels for the other offenses, no points are added to the offense level for the most serious offense. Based only upon the amount of drugs stated in the indictment, the absolute minimum possible, and Dave Husband's role as a leader in this drug distribution arrangement, the offense level for the drug offense is 30. The offense levels of the other counts (the firearm, the taxes, and the illegal aliens) are more than nine points below the 30 of the drug offense; therefore 3D1.4 requires that Dave Husband's Guideline offense level be assessed at 30.

The Guideline range for a level 30 offense is 97 to 121 months. The obvious problem raised here will be discussed in the section on "Recusal" found later in this opinion. The court takes this opportunity to thank the probation office for its able assistance in navigating its way through the complexities of the Guideline procedure.

ed to the recommendation. The sentencing judge replied that he was not influenced by the assistant district attorney's recommendation, and based upon the probation report, imposed the maximum sentence permissible. *Id.* at 259–60, 92 S.Ct. at 497–98.

The Supreme Court of the United States held "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 260, 92 S.Ct. at 498. The Court reinforced this point by saying, "[s]taff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing'." *Id.* It is clear from *Santobello* that a prosecutor may not renege upon the promises made in exchange for a plea of guilty. However, the Court also recognized and emphasized a point critical to the applicability of *Santobello* to the present case. "There is, of course, no absolute right to have a guilty plea accepted. A court may reject a plea in exercise of sound judicial discretion." *Id.* (citations omitted). The prosecutors in the instant case held to whatever promises they may have made, and the defendants make no allegation they failed to do so. In fact, the defendants' entire argument for specific performance rests upon the fact that they do not agree with or approve of this court's exercise of its discretion.

It is obvious from *Santobello* that a trial judge has absolute discretion to reject a plea agreement, but *Santobello* does not stand alone for this proposition. Fed.R. Crim.P. 11(e)(2) clearly vests in the court the discretion to accept or reject "a plea agreement." This court also looks to the unequivocal precedent of the Fifth Circuit, which held *Santobello* inapposite where, as here, "the prosecutor was willing to go through with his part of the bargain, and ... it was the trial judge who rejected the agreement." *United States v. Adams*, 634 F.2d 830 (5th Cir.1981). It is well settled that a plea agreement may be accepted or rejected within the sound exercise of the trial judge's discretion. *Adams*, 634 F.2d at 835; *United States v. Carrigan*, 778 F.2d 1454 (10th Cir.1985); *United States v.*

*Moore*, 637 F.2d 1194 (8th Cir.1981). This alone, without more, is not sufficient to entitle a defendant to specific performance of a plea agreement. *Adams.*

This court finds that the prosecutor in the instant case did not fail to meet a term of the plea agreement. Accordingly, specific performance of the plea agreement, merely based upon the trial court's rejection of the agreement, is not appropriate, and if the defendants' motion is considered as a motion for specific performance, it is denied.

## RECUSAL

■ The defendants argue that this court should recuse itself from this case because "the Court's [sic] statements on the record as well as to Mr. Hawthorn, Mr. Platt, and Mr. Bales ... [concerning the maximum sentence which could be acceptably imposed under the Guidelines] ... constituted participation in the plea bargaining process that also requires the Court's recusal." Motion to Recuse, para. XIII. The defendants rely on *Adams* to support this argument.

The participation by the trial judge in *Adams* is distinguishable from any participation by this court in the instant case. In *Adams*, the trial judge discussed the plea bargain with the parties *prior to the time they had reached an agreement. Adams,* 634 F.2d at 836. Additionally, she then discussed a plea with the defendant *on her own initiative. Id.* According to the Fifth Circuit, "[t]he important fact, however, is that at some point the judge did speak with Adams or his counsel long enough to offer him a new deal...." *Id.* at 834. The new deal the *Adams* judge offered was four years' imprisonment followed by four years' probation, instead of the completely probated sentence the prosecution and defendant had originally agreed to. *Id.* In the instant case, this court did not attempt to enter the negotiations leading up to the plea agreement. At the time the plea agreement was rejected, in open court, this court advised counsel that if a maximum of one hundred forty-

four months, as originally negotiated between the prosecution and the defendant Dave Husband, could validly be imposed under the Guidelines, the plea agreement would be reconsidered. This court offered no new or different terms, akin to those offered by the judge in *Adams*. This court instead notified the parties that it would reconsider the plea agreement if it were negotiated so as to no longer contain an illusory "cap", a maximum sentence that could not possibly be validly imposed under the Guidelines.

This court, like all other sentencing courts, is confronted with the mandate of the Sentencing Commission when considering each and every plea agreement. The court continues, under Fed.R.Crim.P. 11, to be vested with discretion to accept or reject a plea agreement. Simultaneously, the court is bound, under the Sentencing Reform Act, to ensure that the sentence imposed will conform with the Sentencing Guidelines. Apparently the Sentencing Commission recognized the stricture this placed upon any sentencing court, for the policy statement of the Commission requires the court to determine, before accepting any plea agreement, that "the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing." 18 U.S.C.App. Sec. 6B1.2(a). In its commentary to this section, the Commission stated, "when the dismissal of charges or agreement not to pursue potential charges is contingent on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines."

Unfortunately, the United States in the instant case has not provided this court with any decisions applying this section of the Guidelines. The Fifth Circuit has noted in dicta that when a trial judge disagrees with the Guidelines as they would apply under a plea agreement, "the court could have refused to accept the plea agreement", citing 18 U.S.C.App. Sec. 6B1.2(a). *United States v. Lopez*, 875 F.2d 1124,

1128 (5th Cir.1989). In another case, the Sixth Circuit based its holding that a sentencing court is entitled to consider all relevant conduct in deciding what sentence to impose under a plea agreement on its finding that the court must impose a sentence which is consistent with the Guidelines. *United States v. Silverman*, 889 F.2d 1531 (6th Cir.1989).

As Judge Conlon of the Northern District of Illinois stated, "the Sentencing Commission, in response to congressional directive, advises judges not to accept charge bargains unless it is determined, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing." *United States v. Fiterman*, 732 F.Supp. 878 (N.D.Ill.1989). In *Fiterman*, the prosecution and the defendant had reached a plea agreement, part of which required the prosecution to omit from the charge the amount of marijuana seized from the defendant's home. Because the amount significantly affected the Guidelines calculation of an appropriate range, the judge heard evidence from a DEA agent and other sources to determine the amount involved. As Judge Conlon said, "a court cannot fulfill its responsibilities under a sentencing guideline system unless charge bargains are fully and candidly disclosed.... The goals underlying the Sentencing Reform Act are undermined when charges fail to reflect the seriousness of actual offense conduct and the court and probation officer are unaware of the situation." *Id.*

In the instant case, the court did not realize until the hearing that the plea agreement as negotiated could not possibly be valid under the Guidelines. The plea agreement presented two significant problems. First, when presented with a combination of unrelated offenses where Section 3D1.4 of the Guidelines will not permit addition of points to the offense level, the only remedy offered the sentencing judge by the Sentencing Commission is sentencing at the upper end of the Guideline

range. As the Sentencing Commission said in its commentary to 3D1.4, "[i]f there are several groups and the most serious offense is considerably more serious than all of the others, there will be no increase in the offense level resulting from the additional counts. Ordinarily, the court will have latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense." Here, as noted in footnote 2 of this opinion, the upper end of the range for the most serious offense was one hundred twenty-one months. The court could not impose a sentence of one hundred forty-four months, as negotiated in the plea agreement. The agreement was illusory, for the court was led to believe the sentence of one hundred forty-four months could be imposed, and in fact under the Guidelines, it could not.

A second, and more difficult, problem was presented by this plea agreement. As negotiated, the maximum cap on the drug offense was sixty months. Because 3D1.4 will not permit a sentencing judge to consider the less serious offenses in a situation such as this, sixty months, if the plea agreement was accepted, would be the maximum sentence that could be imposed. It was the agreed sentence for the drug offense, the most serious offense, and therefore was the maximum that could be imposed for all of the offenses. Now 3D1.4 and 6B1.2 come into direct conflict. This court could not possibly impose a sentence of sixty months for an offense with an actual range of ninety-seven to one hundred twenty-one months and claim that such a sentence adequately reflected the seriousness of the actual offense behavior. This court has an obligation to avoid undermining the purposes of the Guidelines, and accordingly, this court exercised its discretion and rejected the plea agreement.

This court is extremely mindful of Rule 11's absolute prohibition of judicial participation in plea agreements, yet simultaneously must fulfill its responsibility to ensure that any sentence imposed under a plea agreement does not undermine the Sentencing Guidelines. This court believes that any comment it made in relation to the

plea agreement was not prohibited conduct in violation of Rule 11, but finds that its actions were analogous to those of the trial judge in *United States v. Woods*, 775 F.2d 82 (3d Cir.1985). In *Woods*, the trial judge rejected a plea agreement in open court. The Third Circuit, citing the advisory committee notes to Rule 11, held that the judge did not improperly participate in plea bargaining. "[A]ll comments were made by the district judge when the plea agreement was disclosed in open court.... Because the district judge participated only after the plea was offered at that stage, we find nothing improper in his action." *Woods*, 775 F.2d at 86.

Consequently, this court denies the defendants' motion to recuse, the attempted pleas of guilty are not accepted, the plea agreements are not approved, and this case will proceed in this court.